## SLOAN LUMBER CO. v. DAVIS et ux.
### (No. 12141.)

Court of Civil Appeals of Texas. Fort Worth.
May 25, 1929.

356

P. Walter Brown, of Fort Worth, for appellant.

McCart, Curtis & McCart, of Fort Worth, for appellees.

DUNKLIN, J. F. H. Davis and wife entered into a written contract with J. M. Sims, by the terms of which the latter undertook and agreed to erect certain improvements on a lot in Highland Park addition to the city of Fort Worth, for a consideration of $3,500.

The lot upon which the improvements were to be erected was the homestead of F. H. Davis and wife, and the improvements to be constructed consisted of a dwelling of five rooms, one breakfast room, one bathroom, and two porches. The contract stipulated that the contractor should have a mechanic's lien on the lot and the improvements for the contract price, and the same was duly executed by the contractor and F. H. Davis and wife, duly acknowledged and recorded in the mechanic's lien records of Tarrant county. F. H. Davis and wife also executed to the contractor their promissory note for the sum of $3,500, representing the contract price for the improvements. That note and the mechanic's lien given to secure the same were duly transferred and assigned to the Sloan Lumber Company on the day they were executed. Later, by agreement of all parties in interest, the defendants were entitled to a credit of $720, leaving a balance of $2,780. The assignment of those instruments to the Sloan Lumber Company were made in order to enable the contractor to procure the material to be used in the construction of the improvements.

After the house was finished by the contractor, it was tendered to F. H. Davis and wife, who refused to accept it, on the ground that it was not in accordance with the terms of the building contract they had made with Sims, the contractor.

This suit was instituted by the Sloan Lumber Company against F. H. Davis and wife to recover the balance alleged to be due on their note after allowing the credit mentioned above, and also to foreclose the mechanic's lien on the property, and, from a judgment denying plaintiff the relief prayed for and requiring plaintiff to remove the house from the lot, it has prosecuted this appeal.

In the building contract, upon which plaintiff's suit was based, F. H. Davis and wife were named as parties of the first part and J. M. Sims, the contractor, as party of the second part, and the contract embodied these stipulations:

"That the said party of the second part, in consideration of the premises hereinafter set forth, agrees and contracts with the said parties of the first part, to furnish all the labor and materials for, and to construct, erect and complete upon the lands and premises hereinafter described, in a good workmanlike manner, and in accordance with the plans and specifications agreed upon between the parties, and signed by them for the purpose of identification the following improvements, towit:

"One, one story, frame dwelling of five rooms, one bath room, one breakfast room. and two porches."

Those stipulations in the contract were set forth in plaintiff's petition.

Among others, the following allegations were also embodied in plaintiff's petition:

"There were no written specifications but it was verbally agreed that good, merchantable material should be used in constructing the premises; that the electric fixtures should cost not to exceed Forty-five ($45.00) Dollars, and the owners were to select the particular fixtures desired. * * *

"That the improvements called for in said contract plans and specifications accompanying same were made by said J. M. Sims and plaintiff herein in substantial compliance with the plans and contract."

The petition closed with the prayer for judgment against the defendants for the amount of its debt with foreclosure of the mechanic's lien on the property, and for general relief.

The defendants filed an answer, embodying a general denial of the allegations in plaintiff's petition; also a prayer that the lot on which the improvements were erected was their homestead at the time the contract was executed, and that the improvements were not constructed in accordance with the terms of the contract, either in whole or in part; and that, by reason of that fact, they had refused to accept it, and still refuse to accept the same. There was a further pleading, praying for the removal of such improvements and for a decree of court canceling and removing as a cloud upon their title the purported lien indicated by said contract and the recordation thereof. The alleged defects in the material and construction of the improvements were pointed out in defendants' answer and specified in numerous particulars.

There was a further prayer in defendants' answer to the effect that the stipulation in the building contract that, in the event the house was not completed according to contract, the contractor should still have a lien on the premises for the contract price, less the amount required to finish the improvements according to the terms of the contract, was inserted in the contract through the fraud of Sims and his partner Stewart, and that defendants signed the same without reading the contract and without knowing that that stipulation was embraced therein. In that connection it was alleged that, prior to the execution of the contract, its terms had all been agreed upon, and the stipulation above referred to was not included in those terms; that defendants were inexperienced in such matters, and relied solely upon the representations and promises made by Sims that the contract provided for a completion of the improvements according to its terms and for a lien to secure the same, and did not provide for a lien of any character otherwise, and that defendants signed the contract relying upon that representation.

There was a trial before a jury, and in answer to special issues the jury made the following findings, in substance: (1) The amount agreed upon between the parties to the contract as a consideration to be paid for the improvements was $2,780; (2) the contract between the parties for the erection of the improvements was not substantially complied with according to the agreement between the parties; (3) it would not be practicable to complete the house so as to make it substantially conform to the contract; (4) at the time the defendants executed the contract neither of them knew that it contained this stipulation: "It is further agreed that a failure to complete said improvements, or failure to complete the same according to contract, shall not defeat said indebtedness and lien, but in such case the indebtedness and lien upon said premises and improvements shall exist in favor of said party of the second part, his heirs and assigns, for said contract price, less such an amount as would be reasonably necessary to complete said improvements according to said plans and specifications"; (5) but each of defendants would have signed the contract if they had known that it contained the foregoing stipulation.

It thus appears that the jury failed to sustain the defendants' plea of fraud, leaving the only basis for the judgment rendered their findings that the improvements were not constructed in accordance with the terms of the contract, and that the same cannot now be finished so as to be in compliance with the requirements of the contract. There was ample evidence to support those findings.

Over objection thereto by the plaintiff, the court admitted in evidence an unsigned memorandum in writing dated March 28, 1927, which was three days later than the date of the building contract, and which the defendant F. H. Davis testified embodied certain specifications agreed on by and between himself and Sims, the contractor, to govern in the construction of the dwelling house. The objections urged to the admission of that document were that it was dated three days later than the date of the contract, and after the contract had been assigned to the plaintiff for a valuable consideration paid.

[1] There was no error in that ruling, since, as shown above, the building contract expressly stipulated that Sims would construct the improvements in a good workmanlike manner, in accordance with the plans and specifications agreed upon between the parties and signed by them for the purpose of identification. That the document admitted was unsigned was not made one of the grounds of objection. Plaintiff took the contract with full notice that the specifications for the improvements were necessary, and that the same were to be agreed on by the contractor and the owners. F. H. Davis testified that the date of the specifications was a clerical error, and that the same had been agreed upon before the building contract was signed. However, whether those specifications were agreed upon before or after execution of the building contract was immaterial. Accordingly, the

assignment of error now under discussion is overruled.

Special issues 2 and 3, with the answers thereto, submitted by the court to the jury, are as follows:

"2. Was the contract between the parties for the erection of the improvements on the real estate in controversy substantially complied with according to the agreement between the parties? Answer: No.

"In answering the above question you are instructed that you will not consider for any purpose the fact that the light fixtures were not placed in said house.

"In this· connection you are charged as a matter of law that 'substantial compliance' with reference to contracts means that although the conditions of the contract have been deviated from in trifling particulars not materially detracting from the benefit the other party derived from a literal performance, he has received substantially the benefit he expected.

"3. If you have answered special issue No. 2 in the affirmative you need not answer this question, but if you have answered the same in the negative, then you will answer:

"Question: Would it be practicable to complete the said house so as to make it substantially conform to the contract? Answer 'yes' or 'no.' Answer: No."

Error has been assigned to the submission of issue No. 3, based upon objections made thereto in the trial court (1) on the ground that there was no pleading to serve as a basis for the same; and (2) on the ground that there was no testimony to show that the building could not be completed in substantial compliance with the contract.

■ If the improvements were not completed in accordance with the terms of the contract, then plaintiff could not recover the contract price; and, if plaintiff desired to recover the difference between the contract price and the amount necessary to complete the improvements in accordance with the ·terms of the contract, then the.burden was upon it to plead and show the facts necessary to that relief. In plaintiff's petition, it was alleged that the improvements had been completed according to the 'terms of the contract, and a recovery was sought for the full contract price. There was no separate count in plaintiff's petition for recovery of any amount less than the contract price, and, if·the right to such relief was presented at all, it was under the prayer for general relief.

■ The evidence introduced by defendants to show that the house could not be finished in accordance with the terms of the contract and the submission of that issue, manifestly, was upon the theory that plaintiff's pleadings had embodied a claim for the· alternative relief provided for in the con-

tract, in the event the house was not completed in accordance with the terms of the contract. The burden was upon plaintiff, at all events, to introduce evidence to show a right to such alternative relief, if the full contract price should be denied. The burden was not upon the defendants to establish the negative of that right. The first step necessary for plaintiff to sustain its claim for such alternative relief was to prove that, even though the house was not completed according to the terms of the contract, it was possible and practicable to so complete it; and the next requirement was to further prove the cost of such completion. Appellant argues that "the court judicially knows that any house can be constructed in accordance with the contract providing for its erection, being only a matter of spending the amount of money to do the work." The inference from that argument is that it was possible even to build a new house throughout. But such an interpretation of the contract is unwarranted. The language employed giving plaintiff the right to the alternative relief mentioned above· clearly implies that further work and material was to be added to that already furnished, and not that a new house was to be built in its entirety.

■ Complaint is made·of the refusal of the court to submit special requested issue No. 3 by the plaintiff, reading as follows:

"If you have answered in response to another issue herein submitted to you that the house was not completed in substantial compliance with the contract, then answer this issue:

"What would be the reasonable cost of completing the house in substantial compliance with the contract? Answer in dollars and cents."

There was no error in that ruling, for two reasons: (1) The issue would have been upon the weight of the evidence, in that it assumed that the house could be completed in substantial compliance with the contract; (2) the error, if any, was cured by the finding of the jury that the house could not be completed in compliance with the contract.

■ No reversible error is shown in the failure of the court to specifically instruct the jury that the contract referred to in issue No. 2 was the written contract between Sims and the defendants, since it is not reasonable to suppose that the jury was misled in believing that some other contract was referred to. Furthermore, if the plaintiff desired an instruction that no other than the written contract was referred to in that issue, it should have presented a special request for such an instruction, which it failed to do.

Accordingly, all assignments of error are overruled, and the judgment of the trial court is affirmed.