Ralph E. FAIR, Appellant,

v.

Hilmer UHR, Appellee.

No. 15866.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 24, 1958.

Rehearing Denied Feb. 21, 1958.

Carroll M. Gaines, Foster, Lewis, Langley & Goode, and John W. Goode, Jr., San Antonio, for appellant.

Archie S. Brown and John A. Daniels, San Antonio, for appellee.

MASSEY, Chief Justice.

From a judgment in behalf of Uhr, plaintiff in a suit to recover for personal services, defendant Fair appealed.

Judgment affirmed.

The situation posed in the controversy between Messrs. Uhr and Fair is not unusual. Reduced to simplification their oral contract was one whereunder Uhr was to render personal services incident to remodeling and reconstructing Fair's sizeable house.

For these services Fair agreed to pay an amount in cash, determinable by calculating 10% of the total amount necessary to be expended for labor and materials incident to the remodeling and reconstruction. Whenever it pleased him to do so Fair took charge of negotiating and contracting associated contracts ordinarily the obligation of a general contractor. Examples of contracts so negotiated were: the electrical contract, the plumbing contract, and the air conditioning contract.

On his part Uhr agreed to furnish certain small tools for use on the job, such as power tools, electric saws, etc., and a small truck, in addition to his services in conducting general supervision of the work. In relation to the general supervision he agreed to correlate the work of the various subcontractors (meaning the contractors with whom Fair had contracted and any with whom he had contracted in behalf of Fair) along with that of the general workmen. Also, he agreed to check the work as it was being done and as it was completed to see that it was done in a good and workmanlike manner and in accordance with instructions and plans.

The house was completed and Fair moved into it. Uhr was of the opinion that he had fully discharged the obligations cast upon him by the contract and that he was entitled to be paid the full amount in money which Fair had agreed to deliver upon completion. He had been paid approximately one-half of this sum by way of advancements, and the remaining approximate one-half claimed to be owed was something in excess of $15,000.

Fair withheld payment. His reasons therefor were premised upon two main complaints. One of these was his dispute with the air conditioning contractor, with whom he had personally contracted. He was dissatisfied with the performance of the air conditioning units installed pursuant to that contract, which was for an amount certain in money. A suit was pending between Fair and the air conditioning contractor who had not yet been paid. The other of the reasons was the matter of claimed defects in certain workmanship. A part thereof was workmanship performed by contractors with whom Fair himself had contracted and who had been paid in full by him. Examples of these alleged defects were: (1) In at least two places the hot water and cold water pipes had been misconnected so that hot water flowed from cold water taps and vice versa; (2) a "water-hammer" existed in at least one pipe which made a noise when the water was running; (3) flooring in a "play-room" was caused to warp, etc., because of an excess in humidity resulting from the air conditioning; (4) some doors did not fit closely as the result of being improperly hung in their frames or because not cut so as to properly fit in their frames; (5) some glass "thermo-panes" were either defective or defectively installed since they frosted over contrary to the purpose for which installation had been ordered; (6) insulation in a part of the attic not completed.

While not necessary to this opinion it is to be noted that there was an additional defect created by the sinking of a part of the foundation under a carport. The cause was the location thereof near an abandoned

cesspool. The cost of remedying this defect was established in the evidence and a deduction made by reason thereof from the amount awarded Uhr in the judgment, of which Uhr does not complain.

Shortly after the time when Uhr believed his performance to have been complete, and after Fair had moved into the premises, Uhr and the architect were called out to the premises. At that time Fair demonstrated certain defects which he believed should be remedied, in particular the doors. Uhr agreed to get to work correcting the defects complained of. Fair asked that he delay any corrective action until the following month when he and his wife would be away from the house. Thereafter Fair discovered other defects and circumstances relative to the construction of his house which caused him to lose confidence in Uhr, and, as he testified, he had no further contact with Uhr other than through the exchange of letters. Workmen who went to correct certain defects were told not to proceed when their services were proffered.

Within a month or two written demand and notice in the form of a letter was served upon Fair by Uhr showing the amount of his claim. Fair replied stating that "once you complete the job in a workmanlike manner, I will be glad to make a settlement with you." To this letter Uhr replied in an answer to Fair stating, "Would you be kind enough by return mail to enumerate for me the things that you believe to be incomplete, and not done in a workmanlike manner?" Fair did not respond.

Shortly thereafter the entire matter was turned over to their attorneys by the respective parties. Through his attorney Uhr filed suit for the balance owing for personal services plus attorneys' fees. For our purposes it is to be noted that Fair's answer contained a general denial plus allegations of defective workmanship and defective performance, particularized only in the matter of the air conditioning system, with a counter-plea for damages in the sum of $100,000.

After the suit was filed and before trial Uhr's attorneys took the deposition of Fair. During the course of its taking, Fair was asked to supply a list detailing work, etc., he contended should be attended in order that the job on his house would be complete. He was unable to give information relative thereto other than in the most general terms, and in response to the request represented that he would furnish the list. This was not furnished to date of the trial. At time of the foregoing promise he stated that he should have such a list from his "engineer" in a few days. At date of the trial he admitted that the promise had been made and that the list had not been furnished. He reiterated in the course of testifying on trial that he would furnish the list, using the following words, "I still hope to, but unfortunately the engineer is sick this morning and he can't be here." He testified that his engineer had such a list and that he had seen it, but that he did not have the list, having hired the engineer to make it and to present it to the court. The list was never forthcoming during the course of the trial, and other than for the description of defects in the most general terms on the part of Fair and his witnesses the record leaves the conditions complained of in a highly nebulous and undetermined state.

In our view the contentions of Fair embrace allegations of defective workmanship and materials, which if proved would at least entitle him to a credit upon the amount, if any, owing to Uhr. Yet he fails to disclose what such defects are contended to be in a way and manner whereby they and the cost of any remedy thereof could be ascertained and weighed and tested according to the forms of law. He relies upon the case of Atkinson v. Jackson Bros., Tex. Com.App.1925, 270 S.W. 848, 38 A.L.R. 1377, in which it is held that a building contractor should not only have his recovery diminished by the amount necessary to compensate for any deficiency in his performance (as by defects, etc.), but that the duty is cast upon him to supply the proof

of the amount which should be so credited because of the deficiency. In this connection see also Sloan Lumber Co. v. Davis, Tex.Civ.App. Fort Worth, 1929, 19 S.W.2d 355, error refused; 7 Tex.Jur., p. 578, "Building and Construction Contracts," sec. 30, "Substantial Performance—In General"; 9 Am.Jur., p. 82, "Building and Construction Contracts," sec. 138, "Burden of Proof."

■■ Most certainly the completion of the house in a good and workmanlike manner, within the limitations of Uhr's contract, was a condition the performance of which would give rise to Fair's obligation to perform upon his return promise. However, if a promisor (as one in the position of Fair) prevents or hinders the occurrence of a condition, and the condition would have occurred except for such prevention or hindrance, the condition is ordinarily excused. Restatement of the Law, Contracts, sec. 295. There are exceptions to this rule but under the circumstances of the instant situation it was within the province of the trial court to treat them (as it did) to be without application. See also Sanderson v. Sanderson, Tex.Com. App.1937, 130 Tex. 264, 109 S.W.2d 744; 7 Tex.Jur., "Building and Construction Contracts," p. 563, "Excuses for Failure to Perform," sec. 22, "In General."

■ Treatment of the above is of course with reference to the question of whether Uhr made out a prima facie case on his cause of action, not with reference to whether Fair successfully established his cause of action for damages to be credited upon the claim of Uhr as so made out. If we disregard the question of whether Fair's actions prevented or hindered Uhr in full performance of the contract by him and the case treated as one wherein Uhr had established a prima facie case on his own claim, the burden of proof would be upon Fair to establish his claim for damages. Under that situation Fair would be obliged to make proof of an applicable measure of damages by establishing in the evidence the elements of such a measure. This he did not do. Not only did the situation operate to inhibit any proof by Uhr as to the cost of correcting the rather nebulous and unspecified defects claimed by Fair, but the latter refrained from introducing any proof of damages as part of his own case. At least a part of Fair's complaint embraced the contention that Uhr's work was not completed. The contract was a cost-plus contract and the consideration thereby accruing to Uhr could not be ascertained other than by relation to costs expended or necessary to be expended. Fair had the burden cast upon him to show any necessary cost of completion, if treated as a part of his cause of action for damages. 7 Tex.Jur., p. 602, "Building and Construction Contracts," sec. 47, "Necessary or Reasonable Cost—Particular Items."

■ In our opinion, there having been sufficient evidence for the trial court's finding that Uhr had so discharged his duty of substantial performance as entitled him to maintain his action and to recover upon the proof introduced upon all factors, including the air conditioning contract—and no evidence in behalf of Fair upon his claim for damages,—the judgment below should not be disturbed. However, we believe we are warranted in an additional discussion of the phase of the appeal which relates to the contention of Fair that Uhr must wait for a part of his commission until Fair's suit with the air conditioning contractor has been settled.

■■ Uhr's claim, other than upon his 10% of the amount representing Fair's obligation under the contract made with the air conditioning contractor, was computable upon an amount in money actually expended by Fair. Fair had not paid the air conditioning contractor. Litigation pended between this contractor and Fair, the contractor suing Fair upon his promise to pay according to that contract, and Fair, in turn, contending nonperformance, or alternatively claiming an offset by way of dam-

ages because of defective performance on the part of the air conditioning contractor. There was evidence of sufficient probative force and effect in the record to show and warrant the finding that the installation of the air conditioning unit and its ducts and returns were properly supervised and correlated by Uhr according to plans and specifications incident to performance under his own contract. The defects, assuming they existed in the air conditioning, was no fault of Uhr. He had not been made a party to the suit pending between Fair and the contractor. Any defect existent was in the air delivered and not in the mode whereby it was delivered, i. e., in the ducts and returns. In view thereof, and since the contract price Fair agreed to pay the air conditioning contractor was a fixed price, Uhr's compensation incident to that contract was exactly ascertainable. In so far as Uhr's case is to be considered, it was proper to treat Fair as having received the full value expected by him incident to the installation of the air conditioning. It may be that Fair's discharge of his obligation to Uhr might enhance the amount of damages to which he would be entitled by way of offset in the litigation with the air conditioning contractor. However, his rights, if any, as against that contractor would neither entitle him to defeat Uhr's suit for personal services, nor to diminish Uhr's recovery under the guise of damages. The fact that Fair had not paid the air conditioning contractor would not affect Uhr's right to collect 10% upon the amount contracted to be paid him. No part of the contract here sued upon could be construed to embrace Uhr's agreement to forego the right of compensation in whole or in part until Fair either willingly or under protest had paid for the labor or materials upon which Uhr's 10% could be computed.

Fair's fifth and sixth points on appeal complain of findings and conclusions made by the trial court which relate to the matter of whether there was any formal acceptance of the house by Fair and to the matter of whether the various subcontractors were due to be paid by Fair as Uhr was paid. We are of the opinion that whether these findings and/or conclusions had or had not been made would have no effect on the propriety of the judgment rendered. They were therefore immaterial and will be disregarded and not discussed. For purposes of the appeal the points are overruled.

Judgment affirmed.