**CLEAR LAKE CITY WATER AUTHORITY, Appellant,**

v.

**FRIENDSWOOD DEVELOPMENT COMPANY, LTD., Appellee.**

**Clear Lake City Water Authority, Appellant,**

v.

**Kirby Lake Development, Ltd., Miter Development Company, L.L.C. and Taylor Lake, Ltd., Appellees.**

Nos. 14–07–00404–CV, 14–08–00013–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 2, 2011.

Barry Abrams, Houston, TX, Ramon G. Viada III, Spring, TX, for appellant.

Lawrence J. Fossi, Karen B. Jewell, Houston, TX, for appellees.

Panel consists of Chief Justice HEDGES and Justices FROST and CHRISTOPHER.

## OPINION ON REMAND

ADELE HEDGES, Chief Justice.

This consolidated appeal is on remand from the Texas Supreme Court. Kirby Lake Development, Ltd., Miter Development Co., L.L.C., Taylor Lake, Ltd., and Friendswood Development Co. (collectively, the "Developers") sued Clear Lake City Water Authority (the "Authority") for breach of contract. The trial courts granted the Developers' summary judgments.

In our original opinions, we reversed the trial courts' summary judgments and rendered judgment in favor of the Authority on a contract interpretation ground in both cases. *See Clear Lake City Water Auth. v. Kirby Lake Dev., Ltd.*, 274 S.W.3d 41 (Tex. App.-Houston [14th Dist.] 2008) ("*Kirby Lake II* "), *rev'd*, 320 S.W.3d 829, 842–43 (Tex.2010) ("*Kirby Lake IV* "); *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, No. 14–07–00404–CV, 2008 WL 5131932 (Tex.App.-Houston [14th Dist.] Dec. 9, 2008) (mem. op.) ("*Friendswood II* "), *rev'd, Kirby Lake IV*, 320 S.W.3d at 842–43. The Texas Supreme Court reversed and remanded, determining that our contract interpretation was erroneous and that the Authority had breached the agreements with the Developers by failing to include a measure authorizing the issuance of bonds for purchase of the Developers' facilities in the 2004 bond election (the "2004 bond measure").[1] *Kirby Lake IV*, 320 S.W.3d at 832.

On remand, this court granted the Developers' motion to consolidate the two

---

1. In a separate appeal, the Supreme Court affirmed this court's ruling that the Authority's actions did not rise to the level of a taking. *Kirby Lake IV*, 320 S.W.3d at 832, *aff'g* 321 S.W.3d 1 (Tex.App.-Houston [14th Dist.] 2008).

cases. The issues remaining on remand are whether (1) the Developers conclusively established the causation element of their breach of contract claim, (2) the Authority raised a fact issue on its affirmative defense of lack of causation, (3) the trial courts erred in striking portions of the Authority's summary-judgment evidence, (4) the trial courts erred in awarding contractual interest because the Developers failed to conclusively prove the applicable interest rate, (5) the trial courts erred in setting pre- and post-judgment interest rates, (6) the trial court in *Kirby Lake*[2] erred in issuing a writ of execution,[3] and (7) the trial court in *Friendswood* erred in granting a mandatory injunction that the Authority raise taxes to pay the judgment. We affirm the judgment in the Kirby Lake case, but we reverse the judgment in *Friendswood* and remand for further proceedings consistent with this opinion.

## BACKGROUND

The overall facts of these cases are well-developed in the Texas Supreme Court's opinion in *Kirby Lake Development Limited v. Clear Lake City Water Authority. See id.* at 832–35. Therefore, we focus our background exposition on the facts relevant to the remaining dispositive issues and direct the reader to the Supreme Court's opinion for a more general background.

As part of constructing new residential developments, the Developers built water and sewer facilities. Pursuant to "prefunding" agreements among the parties, the Authority agreed to operate the facilities under a rent-free lease with the Developers, and the Authority was responsible for maintenance and insurance of the facilities and water and sewage lines. The Authority further agreed to include measures authorizing bonds sufficient to reimburse the Developers for seventy percent of their construction in "any" bond election held subsequent to the effective date of the agreements. If such a bond measure passed, the Authority was obliged to buy the facilities from the Developers with this bond money.

In 1998, the Authority held two bond elections that included such bond measures. These measures failed to pass.[4] In September 2004, the Authority held another bond election which did not include such a bond measure. The bonds proposed in this election were approved by the voters. The Developers then sued the Authority for breach of contract. The parties filed several motions, pleas, and responses, including cross-motions for summary judg-

---

**2.** In this opinion, we refer to Cause No. 14–07–00404–CV as *"Friendswood"* and to Cause No. 14–08–00013–CV as *"Kirby Lake."*

**3.** Where necessary, we will refer to the developers involved in Kirby Lake as the "Kirby Lake plaintiffs." These developers include Kirby Lake Development, Ltd., Miter Development Co., L.L.C, and Taylor Lake, Ltd.

**4.** Subsequent to these elections, the Developers, excluding Friendswood Development Co., sued the Authority for breach of contract, quantum meruit, and an unconstitutional taking based on the Authority's use of their facilities to provide water, sewer, and drainage services to customers in the Developers' developments. The jury found that the Authori-

ty had breached its contract, and the trial court ordered the Authority to levy, assess, and collect taxes or assessments to pay the judgment. As is relevant here, however, this Court reversed and remanded to the trial court because we concluded that the contracts unambiguously required the Authority to reimburse the Developers only with voter-approved bond funds that were legally available and allocated for that purpose, *i.e.*, that voter approval of bond issuance is a condition precedent to the Authority's obligation to purchase the facilities. *See Clear Lake City Water Auth. v. Kirby Lake Dev. Co.*, 123 S.W.3d 735, 756 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

ment. As is relevant to these cases on remand,[5] Friendswood Development Company ("Friendswood") asserted in its summary-judgment motion that (1) voter approval was no longer a condition precedent to the Authority's obligation to purchase the facilities from them because the Authority's breach of contract, *i.e.*, its failure to include the 2004 bond measure in the September 2004 bond election, prevented the occurrence of the condition; (2) it was entitled to $1,120,235.99 in damages, as well as pre- and post-judgment interest on its damages, and (3) section 49.066(b) of the Texas Water Code provides that courts may order a water authority board to "levy, assess, and collect taxes or assessments to pay [a] judgment." The *Kirby Lake* plaintiffs likewise contended in their summary-judgment motions that the condition precedent of voter approval was no longer necessary to their recovery of contract damages, and they also asserted that the contract rate could be calculated and recovered at the rate of interest set on the bonds authorized by the September 2004 election.

The Authority responded in both cases by asserting that: (1) the funding for the sales requires voter approval, and no voter approval was given, (2) the Developers cannot prove that voter approval would have been given, and (3) the Authority can prove that the voters would have rejected the bonds. On September 5, 2005, the trial court in *Kirby Lake* granted the *Kirby Lake* plaintiffs' motions for summary judgment. In its final judgment, the trial court awarded damages as follows: (a) $713,141.00 to Kirby Lake Development, Ltd.; (b) $514,783.00 to Taylor Lake, Ltd.; and (c) $80,032.00 to Miter Development Company, LLC. The trial court further ordered that the Kirby Lake plaintiffs recover 6 percent pre-judgment interest[6] and 8.25 percent post-judgment interest on their damages awards and costs of court. The trial court further ordered that execution issue for the judgment. In its final judgment in the *Friendswood* case, signed February 12, 2007, the trial court granted Friendswood's motion for summary judgment, awarded Friendswood $1,120,235.00 in damages with pre-judgment interest set at 6 percent[7] and post-judgment interest set at 8.25 percent and costs of court, and ordered the Authority's board of directors to levy, assess, and collect taxes or assessments to pay the amounts awarded to Friendswood.

The Authority filed motions for new trial in both cases. As is relevant here, the Authority challenged causation of damages, the pre- and post-judgment interest rates awarded to the Developers, the injunctive relief awarded in the *Friendswood* case requiring the Authority to assess and collect taxes to pay the damages awarded

---

**5.** The contract interpretation issue, as well as the Authority's plea to the jurisdiction, the Authority's reserved powers doctrine issue, and the Developers' takings issue, were all decided by the Supreme Court in its *Kirby Lake* opinion. *See Kirby Lake IV*, 320 S.W.3d at 832–34. The Supreme Court concluded that the Authority was not immune to suit, the contracts' reference to "any" bond election referred to every bond election the Authority chose to hold, the agreements did not run afoul of the reserved powers doctrine, and the Developers consented to any alleged taking of the facilities. *Id.* Additionally, the Supreme Court held that the Authority had breached its agreements with the Developers by failing to include the 2004 bond measure in the September 2004 bond election. *Id.* at 832. The Supreme Court's opinion disposed of the Developers' first through sixth issues in both cases.

**6.** This interest was awarded from September 11, 2004, which is the date that the Authority breached the agreements by failing to include the 2004 bond measure in the bond election.

**7.** *See* footnote 6, *supra*.

to Friendswood, and the order that execution issue in the Kirby Lake case. These motions for new trial were overruled,[8] and these appeals timely followed.

## ANALYSIS

### A. Standard of Review

■ We review a trial court's summary judgment *de novo. Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference, and we resolve any doubts in the nonmovant's favor. *Nixon v. Mr. Prop. Management Co.,* 690 S.W.2d 546, 549 (Tex.1985). Where, as here, the trial court grants the judgment without specifying the grounds, we affirm the summary judgment if any of the grounds presented are meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872–873 (Tex.2000). In a traditional motion for summary judgment, if the movant's motion and summary judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex.2000).

### B. The Condition Precedent of Voter Approval

The Texas Supreme Court concluded that the Authority had breached its contracts with the Developers by failing to include the 2004 bond measure in the 2004 bond election. *See Kirby Lake IV,* 320 S.W.3d at 832. We have determined previously that voter approval of such a bond measure is a condition precedent to the Authority's obligation to purchase the facilities from the Developers. *See Clear Lake City Water Auth. v. Kirby Lake Dev., Ltd.,* 123 S.W.3d 735, 745 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

Here, the parties disagree about the consequences of the Authority's breach. In its seventh and eighth issues,[9] the Authority contends that the Developers failed to prove their entitlement to judgment as a matter of law on their contract claims because they did not conclusively prove that the condition precedent of voter approval would have occurred but for the Authority's breach of contract, or, at a minimum, that the Authority raised a genuine issue of material fact in this regard. The Developers, on the other hand, assert that the Authority's breach of the contract prevented the occurrence of the condition precedent—voter approval—thus excusing the nonoccurrence of this condition. We agree with the Developers.

■ Generally, a party who "prevents or makes impossible" the occurrence of a condition precedent upon which its liability under a contract depends cannot rely on the nonoccurrence to escape liability.[10]

---

8. The motion for new trial in *Kirby Lake* was overruled by operation of law on November 20, 2006, although the trial court signed a written order denying the motion on November 27, 2006. The Authority's motion in *Friendswood* was overruled by operation of law.

9. As noted above, the Authority's first through sixth issues were disposed of by the Supreme Court's opinion in *Kirby Lake IV.*

10. *See SLT Dealer Grp., Ltd. v. AmeriCredit Fin'l Servs., Inc.,* 336 S.W.3d 822, 830–831 (Tex.App.-Houston [1st Dist.] 2011, no pet. h.); *II Deerfield Ltd. P'ship v. Henry Bldg., Inc.,* 41 S.W.3d 259, 265 (Tex.App.-San Antonio 2001, pet. denied); *Heritage Life Ins. Co. v. Heritage Holding Corp.,* 751 S.W.2d 229, 234 (Tex.App.-Dallas 1988, writ denied); *Rich v. McMullan,* 506 S.W.2d 745, 747 (Tex.Civ. App.-San Antonio 1974, writ ref'd n.r.e.); *Ebberts v. Carpenter Prod. Co.,* 256 S.W.2d 601, 617–18 (Tex.Civ.App.-Beaumont 1953, writ

The Authority failed to include the 2004 bond measure in the September 2004 bond election, resulting in a breach of the agreements with the Developers. *See Kirby Lake IV*, 320 S.W.3d at 832. This breach by the Authority prevented or made impossible the occurrence of the condition precedent of voter approval. *See II Deerfield Ltd. P'ship v. Henry Bldg., Inc.*, 41 S.W.3d 259, 265 (Tex.App.-San Antonio 2001, pet. denied).

The Authority counters by asserting that nonoccurrence of this condition, *i.e.*, voter approval, is not excused if the Authority can establish that the voters would not have approved the 2004 bond measure had it been included on the ballot. In support of its position, the Authority cites the Restatement (Second) of Contracts § 245 (1981).[11] But this section of the Restatement has not been adopted by the Texas Supreme Court. The Authority also cites *Kiewit Texas Mining Co. v. Inglish*, 865 S.W.2d 240, 245 (Tex.App.-Waco 1993, writ denied) and *Fair v. Uhr*, 310 S.W.2d 125, 128 (Tex.Civ.App.-Fort Worth 1958, writ ref'd n.r.e.). *Kiewit Texas Mining Co.* involved a repudiation of a contract, rather than a breach. 865 S.W.2d at 245. The Waco Court of Appeals simply quoted comment (a) to section 255 of the Restatement for this proposition, without providing any other authority.[12] *Id.* Moreover, the Authority relies on section 245 of the Restatement to support its position, rather than section 255. In *Fair v. Uhr*, the Fort Worth Court of Civil Appeals cited section 295 of the Restatement (First) of Contracts, which, as noted above, is not the section upon which the Authority seeks to rely here. 310 S.W.2d at 128. We thus find these cases inapposite.[13]

Under the facts of this case, we find more persuasive the general rule in Texas that a party who "prevents or makes impossible" the occurrence of a condition precedent upon which its liability under a contract depends cannot rely on the nonoccurrence to escape liability. Accordingly, the Authority cannot rely on a projected failure of voter approval, which it prevented or made impossible by breaching its agreement to include the bond measure on every bond election held subsequent to the agreements, to escape its liability to purchase the Developers' facilities. We conclude that the trial court properly granted summary judgment to the Developers' on this basis, and overrule the Authority's seventh and eighth issues.

■ As a peripheral argument in the *Friendswood* case only, the Authority asserts in its ninth issue that Friendswood has "failed to prove conclusively that it provided proof to the Authority of its ability to convey unencumbered title ownership to the facilities and assign all warranties and guarantees relating to them." This argument puts the cart before the horse: this condition would have been triggered only *after* the Authority had obtained voter

ref'd n.r.e.); *Marvin v. Rogers*, 53 Tex.Civ. App. 423, 426, 115 S.W. 863, 865 (Dallas 1909, no writ).

11. Section 245 states, "Where a party's breach by non-performance contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused." Restatement (2d) of Contracts § 245.

12. Section 255 of the Restatement (Second) of Contracts states: "Where a party's *repudia-*

*tion* contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused." Restatement (2d) of Contracts § 255 (emphasis added). Comment (a) to this section provides that if the condition would not have occurred in any event, "non-occurrence is not excused." *Id.* cmt. (a).

13. Neither case has been cited for the particular propositions the Authority relies on.

approval to issue bonds for the purchase of the facilities from Friendswood or otherwise stood ready to purchase the facilities. The Authority prevented or made impossible the condition precedent of voter approval by failing to include the 2004 bond measure on the 2004 bond election ballot, *i.e.,* by breaching the agreement. It would defy logic to conclude that Friendswood's alleged failure to fulfill a condition that would have been prompted only if the Authority stood ready to purchase the facilities could excuse the Authority's breach, which prevented or made impossible the Authority's obligation to purchase the facilities. We thus overrule the Authority's ninth issue in the *Friendswood* case.

## C. Interest Rates

The award of interest in the trial courts' final judgments in these cases includes three separate components. The first is the interest expressly provided by Section 3.02 of the agreements as one of the components of the purchase price of the Developers' facilities. This contractual interest on the purchase price of the facilities ceased to accrue several years before the September 2004 election and was included in the actual damage awards to the Developers in the trial court's judgments. The second component of the trial court's final judgment is pre-judgment interest at the rate of 6 percent per year, which runs from the moment of breach (September 11, 2004) until entry of the judgment. The third component is post-judgment interest at the statutory rate of 8.25 percent. The Authority challenges the trial court's judgments as to all three interest components.

### 1. Interest Specified in the Agreements

Based on conclusive proof that the Authority breached the agreements and the excuse of the nonoccurrence of the voter-approval condition precedent, the Developers are entitled to recover the benefit-of-the bargain damages that they seek, namely payment of the "Purchase Price," which is defined in the agreements as follows:

> The purchase price (the "Purchase Price") to be paid by the Authority for the sale and/or assignment described in the preceding Section shall be as follows: an amount equal to the sum of the amounts paid by the Developer for design of the Facilities, for construction of the Facilities pursuant to the Contracts (including any approved change orders), for inspection of performance under the Contracts, and for clearing or other miscellaneous costs (including costs of acquisitions of sites for any lift stations and sites for water storage facilities included in the Contracts) attributable to construction or maintenance of the Facilities, *plus interest on such amounts from the date of such payments to the date of reimbursement by the Authority at the rate of interest equal to the lesser of (i) the rate of interest actually incurred by the Developer to fund such payments or, if the purchase price is paid in whole or in part from proceeds of bonds of the Authority, (ii) the average net effective interest rate borne by such bonds;* provided, however, that if such purchase price is paid in whole or in part from proceeds of bonds of the Authority, such purchase price or part thereof shall be subject to the Rules and applicable orders of the [Texas Commission on Environmental Quality].

(emphasis added).

### Calculation of Damages in the Courts Below

The parties agreed that the interest component of the Purchase Price would accrue for only two years because of certain limitations on such interest imposed by the Texas Commission on Environmen-

tal Quality and that any such interest would have ceased to accrue several years before the September 2004 election. *See* 30 Tex. Admin. Code § 293.50(a) (2010) (Tex. Comm'n on Envtl. Quality, Developer Interest Reimbursement). In the judgments below, the trial court awarded each of the Developers the respective Purchase Price as contract damages, calculating this amount by adding seventy percent of the construction costs [14] and two years' interest on these costs. As requested by the Developers, the trial courts used an interest rate of 3.930798% based on the average net effective interest rate of the bonds that were approved by the voters in the September 2004 election. There was no summary-judgment evidence regarding (1) the rate of interest that any of the Developers actually incurred to fund the construction of the facilities or (2) the average net effective interest rate that would have been borne by bonds had they been issued to fund payment of the Purchase Price under the agreements.

In the *Kirby Lake* case, the parties stipulated that the Authority reserved the right to contest the *Kirby Lake* plaintiffs' entitlement to interest on the ground that, even if the Authority is liable for breach of contract, no bonds have been sold to purchase the *Kirby Lake* plaintiffs' facilities, and under the agreements the specified interest rate is zero in the absence of such a bond sale. However, the parties also stipulated that "in the event that this legal argument is ultimately rejected by the courts, ... the developer interest under Section 3.02 of each of the Agreements is recoverable in the following amounts: [the amounts awarded by the trial court to the *Kirby Lake* plaintiffs]." There is no such stipulation in *Friendswood.*

### The Authority's Arguments Regarding the Interest Formula in the Agreements

In its ninth issue in Kirby Lake and tenth issue in *Friendswood,* the Authority argues that, because no bonds were ever sold to pay for the Purchase Price under any of the agreements, the Developers cannot prove what the interest rate is under the formula defined by the Purchase Price. Therefore, the Authority argues that the Developers cannot recover this interest component of the Purchase Price as a matter of law and these interest amounts should be deleted from the two trial court judgments. In the alternative, the Authority asserts that, if the formula could be used at all, the average net effective interest rate borne by the bonds would be zero, and therefore, the interest rate would be zero. In *Friendswood,* the Authority also argues that Friendswood failed to prove the applicable rate for the interest component of the Purchase Price. The Authority asserts that this interest rate cannot be determined because Friendswood did not provide any summary-judgment evidence regarding either (1) the rate of interest actually incurred by Friendswood to fund the payments for the construction of the facilities, or (2) the average net effective interest rate borne by any bonds sold by the Authority to pay the Purchase Price.

### Benefit-of-the Bargain Measure of Damages

The Authority asserts that, because no bonds were ever sold to pay for the Purchase Price under any of the agreements, the Developers cannot prove what the interest rate is under the formula in

---

**14.** The amount of the construction costs incurred by each of the Developers is not in dispute. The parties agree that the principal amount used in calculating the Purchase Price is seventy percent of the costs in question.

the definition of Purchase Price. But "[t]he ultimate goal in measuring damages for a breach-of-contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach." *Mays v. Pierce,* 203 S.W.3d 564, 577 (Tex.App.-Houston [14th Dist.] 2006, pet. denied); *Walden v. Affiliated Computer Servs., Inc.,* 97 S.W.3d 303, 328 (Tex. App.-Houston [14th Dist.] 2003, pet. denied). The Developers sought and the trial courts awarded benefit-of-the-bargain damages based on the Purchase Price that the Authority would have paid for the facilities. The purpose of the benefit-of-the-bargain measure of damages is to restore the injured party to the economic position it would have been in had the contract been fully performed. *Mays,* 203 S.W.3d at 577.

It is undisputed that the Authority never issued any bonds to fund the payment of the Purchase Price to any of the Developers. But this fact does not prevent the Developers from proving what the average net effective interest rate would have been for bonds sold by the Authority to pay the Purchase Price if the Authority had fully performed under the agreements and the voters had authorized such bonds in September 2004. *See Italian Cowboy Partners v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 345–346 (Tex.2011) (concluding that evidence was legally sufficient to support amount of damages awarded upon rescission of lease based on expert testimony regarding amount of money necessary to restore plaintiff to the position it would have been in had it not entered into lease and noting that, under this measure of damages, plaintiff did not need to prove damages based on the actual facts and circumstances regarding the latent defect that entitled plaintiff to rescind lease); *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 20 S.W.3d 692, 703 & n. 5 (Tex.2000) (stating that, even if

underlying litigation settled, to show causation in negligence claim against attorneys, client has to prove that if underlying case were tried and client had been represented by reasonably prudent attorneys, judgment rendered in underlying case would have been more favorable than settlement obtained by allegedly negligent lawyers); *Dickinson v. Auto Ctr. Mfg. Co.,* 594 F.2d 523, 529 (5th Cir.1979) (holding that expert's testimony regarding the position plaintiff would have been in if defendant had completely performed contract raised fact issue regarding amount of plaintiff's benefit-of-the-bargain damages).

■ The Authority's argument is based on the facts as they actually occurred: (1) the Authority breached the agreements; (2) the 2004 bond measure was not submitted to the voters for approval; and (3) no bonds were issued to fund payment of the Purchase Price by the Authority under any of the agreements. But the benefit-of-the-bargain measure of damages is not based on the facts as they actually occurred; rather, it focuses on what the plaintiff's economic position would have been if the contract had been fully performed. *Mays,* 203 S.W.3d at 577. The Authority's argument is contrary to the benefit-of-the-bargain measure of damages and cases applying it. *See Miga v. Jensen,* 96 S.W.3d 207, 215–16 (Tex.2002) (measuring contract damages based on difference between value of stock at time it was supposed to be sold to option-holder and costs that option-holder would have incurred in purchasing stock, even though option-holder did not actually incur these costs and option-holder did not receive stock on the date in question); *Avenell v. Chrisman Props., L.L.C.,* No. 14–08–01180–CV, 2010 WL 1379972, at *4 (Tex. App.-Houston [14th Dist.] Apr. 8, 2010, no pet.) (affirming award of benefit-of-the-bargain damages under lease provision

setting damages based on all rent remaining to be paid under lease, even though, because of lessee's breach, such amounts were not actually paid and even though lessor no longer owned property in question); *Huynh v. Phung*, No. 01–04–00267–CV, 2007 WL 495023, at *6–7 (Tex.App.-Houston [1st Dist.] Feb. 16, 2007, no pet.) (affirming award of benefit-of-bargain damages based upon defendants' promise to repay investment to plaintiff after sale of business, even though business was never actually sold); *Bowen v. Robinson*, 227 S.W.3d 86, 96–99 (Tex.App.-Houston [1st Dist.] 2006, pet. denied) (holding evidence was sufficient to support award of lost profits as benefit-of-the-bargain damages based on evidence of economic position builder would have been in if owner had not breached and if builder had been able to fully perform under contract); *Walden*, 97 S.W.3d at 328–29 (measuring contract damages based on difference between value of the stock on first day that option-holder could have received stock and costs that option-holder would have incurred in purchasing stock, even though option-holder did not actually incur these costs and option-holder did not receive stock on date in question).

For these reasons, the failure of the Authority to issue any bonds to fund the payment of the Purchase Price to any of the Developers does not prevent the Developers from recovering benefit-of-the-bargain damages based on evidence of what the interest rate would have been under the contractual formula had the Authority fully performed under the Agreement. In addition, this failure does not mean that the average net effective interest rate of the bonds in question must be deemed to be zero, thus making the interest rate for the Purchase Price zero as well.

### *Kirby Lake*

In *Kirby Lake*, the Authority stated that if the foregoing legal argument were rejected, then the Authority stipulated to the amounts of interest under section 3.02 that the trial court awarded to the *Kirby Lake* plaintiffs. Because this court rejects the Authority's legal argument, the Authority's stipulation supports the trial court's award of these interest amounts to the *Kirby Lake* plaintiffs as a matter of law, even though there was no summary-judgment evidence as to either (1) the rate of interest actually incurred by the *Kirby Lake* plaintiffs to fund the payments for the construction of the facilities, or (2) what the average net effective interest rate would have been on the Authority's bonds if the Authority had fully performed under the agreement and issued bonds to fund payment of the Purchase Price. Therefore, in *Kirby Lake*, we overrule the Authority's ninth issue.

### *Friendswood*

■ In *Friendswood*, there is no such stipulation. Friendswood had the burden of conclusively proving the interest rate under the formula in section 3.02. *See* Tex.R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000). There was no stipulation, nor was there any evidence showing the lesser of (1) the rate of interest actually incurred by Friendswood to fund the payments for the construction of the facilities, and (2) what the average net effective interest rate would have been on the Authority's bonds if the Authority had fully performed under the agreement and issued bonds to fund payment of the Purchase Price to Friendswood. There was no evidence that a bond for the additional $1.1 million would have had the same interest rate as the actual interest rate Friendswood incurred to fund the pay-

ments for construction of the facilities. On this record, though Friendswood proved its entitlement to the $1,038,586.51 in construction costs as a matter of law, the trial court erred in awarding Friendswood judgment as a matter of law as to the interest component of the Purchase Price. But the Authority did not file a cross-motion for summary judgment on this point. Therefore, in *Friendswood*, we sustain the Authority's tenth issue, reverse the trial court's judgment, and remand for further proceedings regarding the amount of interest that Friendswood is entitled to recover under section 3.02 of its agreement and for rendition of judgment in Friendswood's favor. *See Coward v. Gateway Nat'l Bank of Beaumont*, 525 S.W.2d 857, 860 (Tex.1975) (reversing summary judgment in favor of plaintiff and remanding for further proceedings because court concluded plaintiff was not entitled to summary judgment as to amount of attorney's fees); *A.W. Wright & Assoc., P.C. v. Glover, Anderson, Chandler & Uzick, L.L.P.*, 993 S.W.2d 466, 470–71 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (remanding rather than rendering or affirming as modified after reversing summary judgment that trial court erroneously rendered in plaintiff's favor).

**2. Pre- and Post–Judgment Interest Rates**

In issue ten in *Kirby Lake* and issue eleven in *Friendswood*, the Authority asserts that the pre- and post-judgment statutory interest rates imposed by the trial courts are improper because the agree-ments themselves set the interest rate. The Authority relies on the rates of interest discussed in section 3.02 of the agreements, excerpted above, to support this argument.

Post-judgment interest—and therefore pre-judgment interest [15]—in a contract case where the contract provides for interest is the lesser of the interest rate specified in the contract or eighteen percent a year. Tex. Fin.Code Ann. § 304.002 (West 2006). If the contract does not provide for interest, then the post-judgment and pre-judgment interest rate is five to fifteen percent a year based upon the prime rate.[16] *See id.* § 304.003; *see also Exxon-Mobil Corp. v. Valence Operating Co.,* 174 S.W.3d 303, 319–20 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) (applying section 304.003 to determine pre-judgment interest rate).

■ As discussed above, the only interest rate upon which the Authority relies is the reference in section 3.02 to the interest rate applicable to the purchase price of the facilities. We see no basis for that interest rate, with its particular uses and limitations applicable only to the purchase price of the facilities, to supplant the statutory interest rate. *Cf. Meridien Hotels, Inc. v. LHO Fin. P'ship I, L.P.*, 255 S.W.3d 807, 824–25 (Tex.App.-Dallas 2008, no pet.) (op. on reh'g) (concluding that interest rate defined in lease should not be applied because it did not purport to make rate apply to unpaid holdover rent and thus statutory rate of interest applied). Further, the cases cited by the Authority do not sup-

---

**15.** In a breach of contract case, the pre-judgment interest rate is the same as the post-judgment interest rate. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 532 (Tex.1998). Pointing to this proposition, Friendswood asserts in its briefing that this Court should reform the judgment to reflect pre-judgment interest at 8.25 percent, rather than 6 percent as awarded by the trial court. However, Friendswood did not file a notice of appeal; thus it is not entitled to any affirmative relief. *See* Tex. R.App. P. 25.1(c).

**16.** The parties agree that the applicable statutory post-judgment interest rate at the time of judgment in these cases was 8.25 percent.

port its argument. In *Adams v. H & H Meat Products, Inc.*, the parties agreed by contract to the rate at which past due invoices would bear interest. 41 S.W.3d 762, 780 (Tex.App.-Corpus Christi 2001, no pet.). In *AU Pharmaceutical, Inc. v. Boston*, the creditors expressly agreed that the funds to which they were entitled "shall not appreciate with interest or by any other means, the parties specifically agreeing that any interest to be charged on the Settlement Proceeds to equal zero (0) percent." 986 S.W.2d 331, 333 (Tex. App.-Texarkana 1999, no pet.). ·

The parties' agreements do not address any interest rates related to past due amounts; instead, as discussed above, the only interest rates contemplated by the agreements are for interest due to the Developers on the purchase price of their facilities. Accordingly, the applicable pre- and post-judgment interest rates must be determined under section 304.003, which applies when section 304.002 does not. *See* Tex. Fin.Code Ann. § 304.003; *see also Meridien Hotels, Inc.*, 255 S.W.3d at 824–25. We overrule the Authority's pre- and post-judgment interest rate issues.

### D. Writ of Execution and "Injunctive" Relief

In its final issue in *Kirby Lake*, the Authority complains that the district court's writ of execution to enforce the judgment is erroneous in that it violates public policy. Although the final judgment authorizes issuance of a writ of execution should the *Kirby Lake* plaintiffs seek one, nothing in our record indicates that a writ of execution has issued. Therefore, determining this issue would be premature at this point. If and when the *Kirby Lake* plaintiffs seek a writ of execution, the Au-

thority may then raise this issue. We thus overrule the Authority's final issue in the *Kirby Lake* case.

■ In *Friendswood*, the Authority contends that the trial court had no basis to instruct the Authority to "levy, assess and collect taxes or assessments to pay the amounts awarded to [Friendswood] in this Final Judgment." However, the Texas Water Code explicitly authorizes "[a]ny court in the state rendering judgment for debt against a district [to] order the board to levy, assess, and collect taxes or assessments to pay the judgment." Tex. Water Code Ann. § 49.066(b) (West 2008). Section 49.066(b) of the Texas Water Code authorizes any court in this state to order a water authority to assess taxes to pay judgments for contract damages. *Id.* The Authority asserts in a conclusory manner that this section contemplates a "mandamus remedy." The Authority cites no authority for this proposition, and none of the cases cited in this section of its brief concern the Texas Water Code or any other statute clearly authorizing such a remedy.[17] Because the trial court's judgment tracks the statutory language permitting a court rendering judgment to order a water authority board to levy, assess, and collect taxes or assessments to pay the judgment, we overrule the Authority's final issue in the *Friendswood* case.

### CONCLUSION

We have sustained the Authority's tenth issue regarding the award of interest in the *Friendswood* case. Accordingly, in *Friendswood* only, we reverse the trial court's judgment and remand for further proceedings regarding the amount of interest that Friendswood is entitled to recover

---

**17.** In its motion for reconsideration of summary judgment filed in the trial court, the Authority stated: "The Authority does not question the Court's power to compel the raising of taxes to satisfy a judgment against a water district."

under section 3.02 of its agreement and for rendition of judgment in Friendswood's favor. Having overruled all of the Authority's issues in the *Kirby Lake* case, we affirm that judgment.