**Reversed and Rendered and Memorandum Opinion filed November 4, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-01003-CV

---

## CEDAR SPRING ENTERPRISES LLC D/B/A ELITE CARS GROUP, Appellant

### V.

## AUCTION CREDIT ENTERPRISES, LLC ("ACE") AS ASSIGNEE OF WESLEY TRAVIS FREE, Appellee

---

**On Appeal from the County Civil Court at Law No. 3
Harris County, Texas
Trial Court Cause No. 1122910**

---

### MEMORANDUM OPINION

Appellee Auction Credit Enterprises, LLC ("ACE") filed suit against appellant Cedar Spring Enterprises, LLC d/b/a Elite Cars Group ("Elite") for breach of contract relating to Elite's sale of a vehicle to a customer—Wesley Travis Free. After a bench trial the trial court issued judgment in favor of ACE. In what we construe as two issues, Elite argues that: (1) the evidence was legally and

factually insufficient to support an award of damages; and (2) Free's assignment of his cause of action to ACE was void. We reverse and render a take-nothing judgment in favor of Elite.

## I.   BACKGROUND

The nature of the relationship between the two parties is undisputed. ACE—a "floor planner"—and Elite—a car dealership—were parties to a floor plan agreement whereby ACE agreed to advance funds to Elite to purchase vehicles. The floor plan agreement gave ACE a security interest in the inventory to ensure repayment. The agreement provided that upon the sale of a vehicle from Elite to a retail customer, Elite was required to remit payment of its purchase price of the vehicle to ACE, and, in turn, ACE was required to release the title to Elite in order for Elite to register the vehicle in the purchaser's name.

On or about June 14, 2016, Free paid Elite $15,200 in cash for a 2009 Cadillac CTS, which included taxes and title registration fees. Free took possession of the Cadillac on the same day. Sam Kalash, who testified he was the owner of Elite, filled out an application for Texas title on the date of the sale. The vehicle passed inspection on June 15, 2016. Elite issued temporary tags authorizing Free to drive the vehicle. Elite asserts that it paid $10,887.00 to ACE on June 14, 2016, and that it made another payment of $2,095.00 to ACE on June 23, 2016 for the Cadillac.

In the trial court and on appeal, Elite asserts that it had paid off the Cadillac in full; Elite further claims that ACE misapplied the paid amounts to previous vehicle purchases. Elite sent a request for ACE to release the title to the Cadillac in September 2016, but ACE refused. After a nineteen-month silence, ACE responded by informing Elite that $12,000 was still due on the vehicle.

2

In March 2018, ACE and Free entered into an "Agreement and Assignment of Claim," wherein ACE agreed to release the title to the Cadillac to Free, and Free assigned to ACE his claims against Elite arising from the sale of the Cadillac and the failure and refusal to transfer title Free also released and discharged ACE from any liability related to "ACE's actions or inaction's [sic] with regard to the Purchaser and the Motor Vehicle."

ACE filed suit against Elite for breach of contract. On April 27, 2018, Elite registered the Cadillac and title in Free's name. ACE does not dispute that the Cadillac was registered in Free's name.

On February 21, 2019, ACE filed a motion for summary judgment averring that Free never received title. More specifically, ACE argued that Free performed his contractual obligations, but Elite defaulted under the contract:

> by failing to register Free's name as owner of the Vehicle; by failing to apply for a certificate of title for the Vehicle listing Free's name as owner of the vehicle; by failing to file with the appropriate designated agent each document necessary to transfer title to and register the Vehicle in Free's name; and by failing to remit the motor vehicle sales tax associated with the sale of the Vehicle.

ACE argued that as a result of Elite's breach, Free suffered $15,200 in damages— the retail sales price, including taxes and fees, of the Cadillac.

A bench trial was held on July 30, 2019. Elite argued that Free suffered no damages because he was in possession of the Cadillac from the date of purchase and title was currently in his name. Elite also argued that ACE could not be assigned Free's claims because ACE was a joint-tortfeasor. Two witnesses testified at trial: Gregory Cunningham, a regional manager for ACE, and Kalash, who testified he was the owner of Elite. Cunningham testified that the payments Kalash mentioned were not for the Cadillac. Kalash testified the payments were made for the Cadillac pursuant to the terms of the agreement. The trial court found that ACE

3

had been damaged by Elite's failure to deliver title to Free after his purchase of the vehicle. The court further found that Elite failed to: apply for registration for the vehicle, apply for a certificate of title in Free's name, file the appropriate documents necessary to transfer title to the Cadillac to Free, and remit the required motor vehicle sales tax. The court awarded ACE $15,200 in damages, $2,000 in attorney's fees, pre and post judgment interest and costs.

Elite filed a motion for new trial on November 6, 2019, which was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). Elite filed this timely appeal.

## II. EVIDENTIARY SUFFICIENCY

In what we construe as its first issue, Elite argues that the evidence was legally insufficient to support the trial court's damages award of $15,200 to ACE.

### A. STANDARD OF REVIEW & APPLICABLE LAW

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would supports it. *City of Keller v. Wilson*, 168 S.W.3d 802, 821–22, 827 (Tex. 2005); *see also Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827. "If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so." *Id.* at 822. "A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement." *Id.* There is "no evidence" or legally insufficient evidence when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no

4

more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *See id.* at 810.

We apply this standard mindful that this court is not a fact finder. *See Turner v. Ewing*, 625 S.W.3d 510, 517 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (citing *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998)). The trier of fact is the sole judge of the witnesses' credibility and the weight afforded their testimony. *Id.* However, "[d]etermining the proper method for measuring damages is a question of law, which we review de novo." *Yazdani-Beioky v. Sharifan*, 550 S.W.3d 808, 834 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

**B.     APPLICABLE LAW**

Elite argues that the trial court erred by awarding damages equal to the entire purchase price of the Cadillac. Elite admits that an individual may suffer loss-of-use damages resulting from the delay in title registration; however, according to Elite, Free did not suffer any loss-of-use damages. An injured party must demonstrate compensable damages:

> By design, loss-of-use damages compensate a property owner for damages that result from "a reasonable period of lost use" of the personal property. The amount of damages may thus be measured according to the particular loss experienced, such as the amount of lost profits, the cost of renting a substitute chattel, or the rental value of the owner's own chattel.

*J & D Towing, LLC v. Am. Alternative Ins. Corp.*, 478 S.W.3d 649, 655–56 (Tex. 2016).

In comparison, "[t]he correct standard for assessing loss of benefit of the bargain damages measures the difference between the value as represented and the value as received by the nonbreaching party." *Sacks v. Hall*, 481 S.W.3d 238, 247 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *see Yazdani-Beioky*, 550

5

S.W.3d at 834. The purpose of the benefit-of-the-bargain measure of damages is to restore the injured party to the economic position it would have been in had the contract been fully performed. *Clear Lake City Water Auth. v. Friendswood Dev. Co., Ltd.*, 344 S.W.3d 514, 523 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

ACE argues that in breach of contract cases, the benefit-of-the-bargain damages are appropriate; thus, ACE asserts that it was within the trial court's discretion to measure damages based on the purchase price of the Cadillac. Regardless of which method for calculating damages is employed, we agree with Elite that there is insufficient evidence to support the award of damages.

## C. APPLICATION

### 1. Loss-of-Use Damages

We first note that the trial court did not expressly or implicitly rule that the damages awarded to ACE were loss-of-use damages. Thus, we must determine the proper measure of damages, if any. *See Yazdani-Beioky*, 550 S.W.3d at 834. Also, we note that Free did not testify at trial, and no evidence from him was admitted concerning any damages he suffered. At trial, an affidavit that Free filed in 2018 was admitted. Free averred in his affidavit that at that time, he had not yet received title to the Cadillac; however, as stated above, ACE does not contest that since the filing of Free's affidavit, Free has received title to the Cadillac.

The only evidence on record to support the trial court's award of damages was the sales contract itself, indicating that Free paid $15,200 to Elite, by check, for the Cadillac. The record reflects that Free received possession of the vehicle at the time of the purchase. Free never lost possession of the vehicle nor was he ever unable to drive the vehicle. There was no evidence indicating that his vehicle was ever towed or that Free otherwise sustained any injury due to the delay in

6

registering the title in his name. After the purchase, Elite issued temporary tags to Free, which were continually renewed so that Free was able to drive the vehicle without interruption until title was properly registered. The trial court admitted into evidence an application for Texas title showing that Elite filled out an application for title for the vehicle shortly after Free's purchase; however, according to Kalash's trial testimony, Elite was unable to register the vehicle in Free's name until ACE first transferred title to Elite.

As to the failure to pay the sales tax, Cunningham did not testify regarding this issue. Thus, the only testimony at trial concerning the sales tax was Kalash's, and he testified that Elite paid the required sales tax.

ACE argues the record supports the trial court's judgment because "Free received fraudulent temporary tags." However, the assertion that the temporary tags that Free received were fraudulent is completely unsupported. ACE provides no authority or factual basis for this accusation. And we have found nothing in the record or trial testimony suggesting that the tags were fraudulent.

Ultimately, ACE failed to demonstrate that Free suffered any damages because of the delay in the title registration. We conclude that the evidence is legally insufficient to support any loss-of-use damages. *See J & D Towing*, 478 S.W.3d at 655–56; *City of Keller*, 168 S.W.3d at 827.

### 2.    Benefit-of-the-Bargain Damages

Alternatively, ACE claims that the trial court's award was proper under a benefit-of-the-bargain analysis. And, as ACE argues, benefit of the bargain is the usual and customary measure of damages in breach of contract cases. *See Yazdani-Beioky*, 550 S.W.3d at 828; *see also Picard v. Badgett*, No. 14-19-00006-CV, 2021 WL 786817, at *17 (Tex. App.—Houston [14th Dist.] Mar. 2, 2021, no pet.) (mem. op.). However, as we observed in *Yazdani-Beioky*, "[t]he correct standard for assessing loss of benefit[-]of[-]the[-]bargain damages measures the difference

7

between the value as represented and the value as received by the nonbreaching party." *Id.*

Even assuming, *arguendo,* that the benefit of the bargain is the proper calculation method, ACE failed to present any evidence to demonstrate any difference between the value of the Cadillac as represented and the value as received by Free. *See id.* If the proper damage calculation is benefit of the bargain, then the goal would be to restore Free to the position he would be in if the contract had been fully performed. *See Clear Lake*, 344 S.W.3d at 523. Free paid $15,200 for title to the Cadillac, which is what Elite eventually gave him. To reiterate what we summarized above, Free received the vehicle and remained in full possession of the vehicle until title was properly registered in his name. Elite issued temporary tags, which it continually renewed, so that Free could legally drive the vehicle. While there was a delay in registering the title in Free's name due to the dispute between ACE and Elite, there is no evidence in the record supporting a finding that Free suffered any damages as a result of that delay. In short, Free is already in the position he would have been in if the contract had been performed. *See id.* The record reflects that Free eventually received what he bargained for under the contract and that he suffered no damages resulting from the delay. Therefore, the evidence is also legally insufficient to support an award of any benefit-of-the-bargain damages. *See City of Keller*, 168 S.W.3d at 827. We sustain Elite's first issue.

Because we sustain Elite's first issue, we need not address its other sub-issues relating to the Texas Transportation Code and double recovery or its other issue concerning whether Free's assignment of his cause of action was void. *See* Tex. R. App. P. 47.1. And because we have concluded there was legally insufficient evidence to support the award of damages, ACE is not entitled to attorney's fees. *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292

8

S.W.3d 660, 663 (Tex. 2009) ("[S]uits cannot be maintained solely for attorney's fees; a client must gain something before attorney's fees can be awarded. While making losing parties bear their own attorney's fees may add injury to insult, the American Rule has long been that each party pays its own lawyers."). Therefore, we reverse the judgment of the trial court and render that ACE take nothing on its claim against Elite. *See* Tex. R. App. P. 43.3; *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 835–36 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (op. on reh'g) ("When the reviewing court sustains a 'no evidence' point, it is the court's duty to render judgment for the appellant because that is the judgment the trial court should have rendered.").

## III.   CONCLUSION

We reverse the judgment of the trial court and render judgment that ACE take nothing.


/s/    Margaret "Meg" Poissant
        Justice


Panel consists of Justices Jewell, Poissant, and Wilson.