### MANUEL TREVINO v. DAMACIO CANTU.

#### (Case No. 1638.)

1. EQUITY — CONTRACTS.— Equity cannot change the contract of a party and relieve him from an undertaking which he has fairly assumed, especially after he has received the consideration which induced him to make the contract.

2. WARRANTY.— A vendor of land made a deed thereto, with general warranty, and executed at the same time another instrument, by which, if the title should fail, it was stipulated that the purchaser (who went into possession under his deed) should not recover more than $2,000, Mexican coin, which was the price paid. *Held:*

   (1) The vendor could not, by afterwards confessing that the title was defective, compel by suit the purchaser to receive the $2,000.

   (2) The purchaser had a right to retain possession and resist an adverse claim, and, in case of eviction, recover according to the terms of his contract.

   (3) He was entitled to retain possession as against his vendor, to buy out the adverse claimant, if he desired to do so, and to every other advantage resulting from possession.

APPEAL from Cameron. Tried below before the Hon. John C. Russell.

Suit by appellant to compel the rescission of the covenants of a deed, and, should the defendant elect to receive the tender of purchase money made, then to compel a reconveyance of the land. General demurrer, which was sustained by the court, with leave to amend. Appellant declining to amend, final judgment dismissing the petition.

The petition alleged, in effect, that on January 30, 1869, appellant purchased from one Andres Garcia Elizondo the lands in question, being five undivided square leagues known as "La Barreta." Appellee was then, and had been for some years, in possession of the same. On January 27, 1870, appellee purchased the entire five leagues from appellant, receiving a warranty deed therefor, at and for the sum of $2,000, in Mexican coin. At the time of this sale, both parties " actually and *bona fide* supposed and verily believed " that at the time the title to said lands was in the Mexican state of Tamaulipas (prior to 1836),— there had been a grant thereof to Francisco Balli, one of the grantors under whom appellant deraigned title. At the same time an agreement in writing was entered into, that, in the case of the failure of said title, the damages which appellee should be entitled to recover from appellant should be limited to the sum of $2,000, Mexican coin. In January, A. D.

1883, the parties first learned that the lands had never been granted by the state of Tamaulipas to Balli, or any other person; that the title thereof was in the state of Texas, and that appellant had never had any right to convey the same. On the 3d day of March, A. D. 1883, appellant — being past the age of fifty years, having a large family of children, and being desirous of so settling all of his affairs and personal obligations that his estate might not be wasted and frittered away by litigation after his death — went to appellee and stated to him that said title would fail, as he believed; that he wished to place him *in statu quo,* and then and there tendered to him the purchase money — the sum of $2,000 in United States legal tender notes — and a quitclaim deed, in due form, whereby appellee might reconvey the said lands to appellant, which was refused. Thereupon appellant requested him to execute the writing then and there also tendered, whereby appellant would be discharged from the covenants of his said deed, which appellee also refused. In his petition appellant offered to pay into court the sum of $2,000, in Mexican coin, in such manner as the court should direct, specially admitting and confessing that the title had failed and that the lands belonged, in fact, to the state. The three several deeds and discharge were attached to the petition, marked respectively exhibits A, B, C, D, and made part thereof.

The petition also disclosed the fact that appellee was about to sell the land for $4,000.

*Chas. E. Miller,* for appellant, cited: Blumberg *v.* Mauer, 37 Tex., 2; Ross *v.* Armstrong, 25 Tex. Sup., 354; O'Connell *v.* Duke, 29 Tex., 299; Emerson *v.* Navarro, 31 Tex., 334; Bispham's Pr. of Eq. (2d ed.), sec. 470; Gillespie *v.* Moon, 2 Johns. Ch., 585; Peck *v.* Hensley, 20 Tex., 673; Westrope *v.* Chambers, 51 Tex., 178; Brock *v.* Jones, 16 Tex., 461; Bradshaw *v.* Davis, 12 Tex., 336; Rawle on Cov. for Title, 344–348. And on repayment of purchase money to vendee, he must reconvey. Park *v.* Cheek, 4 Cold. (Tenn.), 20.

*Wells & Rentfro* and *Waul & Walker,* for appellee, cited: Custard *v.* Custard, 25 Tex. Sup., 49; Brown *v.* Kennedy, 33 Beav., 133; Westrope *v.* Chambers, 51 Tex., 178; Upshaw *v.* De Bow, 7 Bush (Ky.), 442.

WILLIE, CHIEF JUSTICE.— The transaction between Trevino and Cantu out of which this suit arose was, according to the former's own statement of the case in his pleadings, a conveyance by him of

five leagues of land to Cantu for the consideration of $2,000, with the understanding that, if the title failed, Trevino should pay as damages to his vendee the amount received by him as purchase money and no more. He was to that amount a warrantor of the title to the land.

Trevino alleges that he is of opinion that the title has failed, and is willing to confess that fact, and therefore prays relief in the alternative as follows: 1st. That he be released from his obligations under the warranty; or 2d. That Cantu be required to accept the sum of $2,000 and reconvey the land to him, and he tenders this amount of money in court. This tender is to have effect only in case of the reconveyance, and not in the event of a mere release from the covenants of warranty; and such was the nature of the offer made to Cantu before the suit was brought.

No allegation of fraud on the part of Cantu is made, nor is it charged that there was any mistake of fact occurring at the time of the conveyance made between the parties. It is averred that Trevino was mistaken in supposing that the original grantee, under whom he claimed, had a good title from the state of Tamaulipas. Whether this was a mistake of fact or of law does not appear; and even if the former, it is against just such mistakes that purchasers protect themselves by requiring covenants of warrants from their vendors. It would be the height of injustice to allow a warrantor to be relieved from an obligation on account of the happening of a contingency, against which the obligation was specially intended to provide. In this case it would relieve Trevino from the payment of a sum which he virtually admits in his pleadings he justly owed to Cantu under the express terms of his contract, the contingency upon which it was to be paid having occurred.

It is not the province of equity to change the contract of a party, and relieve him from an obligation fairly undertaken, especially after he has received the consideration which induced him to assume it. It can compel execution of agreements but not substitute one agreement for another. 1 Story's Eq., §.115.

Nor could Trevino compel Cantu to reconvey him the land upon returning the purchase money. This was not the agreement of the parties. Cantu had a right to retain possession and defend against the adverse claim; to defeat it, if he could; or, in case of eviction, to recover upon the warranty against the vendor. He was entitled to an opportunity of compromising, or buying out the opposing claimant, and to every other privilege enjoyed by the possessor of lands to which an adverse title is set up. To compel him to re-

convey would be to give his vendor all these advantages, and would permit the latter to become again possessed of land which, according to his own showing, had doubled in value, by paying only the original sum received for it. We are not referred to any rules of equity which sanction such a course on the part of a vendor, and it is certainly contrary to every principle of justice.

But these questions have been treated as if the title conveyed by Trevino to Cantu had actually proved worthless. Such is not the averment of the petitions, but it is merely alleged that the plaintiff believed that the title had failed and was willing to admit such to be the case. This furnished no reason for a rescission of the contract, or a release of Trevino from his warranty. Cantu himself could not have recovered upon the warranty until eviction, or unless he had yielded possession and taken the risk of proving a valid outstanding title against his vendor. Chambers v. Westrope, 51 Tex., 178.

Much less could his vendor claim a rescission in opposition to the wishes of his vendee, by a mere confession of the invalidity of the title he had conveyed. To allow this would be to place the purchaser at the mercy of the seller, for, in all instances when the land had appreciated in value, the seller could confess invalidity of title, return the purchase money, recover the land, and speculate upon the advance in the value of the property. It is needless to say that the law countenances no such injustice.

What would be the rights of the appellee should he choose, on his part, to rescind the contract for the sale of the land and commence proceedings for that purpose, it is not necessary in this case to determine. That the pleadings of the appellant showed upon their face no right to the relief sought by him is evident, and the court did not err in sustaining a demurrer to them, and the judgment is affirmed.

AFFIRMED.

[Opinion delivered February 12, 1884.]