**Affirmed and Memorandum Opinion filed August 26, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00386-CV

---

### INDUSTRIAL III, INC., Appellant

### V.

### KENNETH BURNS, II, MELC LIQUIDATING, INC. F/K/A MELCO BLOWOUT PREVENTER SPECIALTIES, INC., TI-LIQUIDATING, INC., F/K/A TOWNSEND INTERNATIONAL BOP'S, INC., AND CAMERON INTERNATIONAL CORPORATION F/K/A COOPER CAMERON CORPORATION, Appellees

---

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2009-58411**

---

## M E M O R A N D U M   O P I N I O N

This appeal focuses on appellant Industrial III, Inc.'s efforts to obtain a fee in connection with the purchase of two oilfield service companies by a third company. Industrial III identified the two service companies as potential acquisition targets and brought them to the acquiring company's attention.

Industrial III seeks a fee based on a percentage of the acquisition price. Following a jury trial, the trial court signed a take-nothing judgment on all claims asserted by Industrial III in conformity with the jury's verdict.

Industrial III raises five issues on appeal challenging the trial court's take-nothing judgment in favor of Kenneth Burns II; Melc Liquidating, Inc. f/k/a Melco Blowout Preventer Specialties, Inc. ("Melco"); TI-Liquidating, Inc., f/k/a Townsend International BOP's, Inc. ("Townsend"); and Cameron International Corporation f/k/a Cooper Cameron Corporation ("Cameron").

Industrial III contends on appeal that (1) the trial court erred in failing to submit Industrial III's quantum meruit and unjust enrichment claims against Cameron in the jury charge; (2) the trial court erred in granting a directed verdict on Industrial III's fraud claims against Cameron, Burns, Melco, and Townsend; (3) the jury's award of zero damages in answer to Question No. 10 is against the great weight and preponderance of the evidence and is manifestly unjust; (4) the trial court erred in excluding Plaintiff's Exhibits Nos. 79 and 134 from evidence; and (5) the trial court erred in awarding costs to Cameron, Burns, Melco, and Townsend.

We affirm the trial court's judgment.

## BACKGROUND

Industrial III is a business brokerage firm specializing in introducing potential buyers and sellers of industrial companies. Cameron is a global provider of pressure control, processing, flow control, and compression systems in the oil and gas industry.

On June 17, 2005, Industrial III sent Cameron a proposed contract providing that Cameron would pay Industrial III a "service fee" if Cameron purchased or

2

otherwise completed a transaction with an acquisition target introduced to Cameron by Industrial III. Under this initial proposal, the "service fee" was to be paid if Cameron completed the transaction within 24 months of the introduction. The 24-month term is called a "tail." The introduction is called a "registration."

Cameron responded by sending Industrial III a revised draft changing the 24-month tail to a six-month tail. The relevant portion of the revised draft provided as follows:

> "Fee — In the event CAMERON 1) enters into any business transaction with a Candidate introduced by [Industrial] III, or with such Candidate's owners or shareholders ("Transaction") and 2) the transaction is consummated within 6 months of registration [Industrial] III's compensation will be in the form of a Success Services Fee. [Industrial] III will receive a fee of 5 percent (5%) of the first $1,000,000 and 1 percent (1%) of the balance of the aggregate consideration of the Transaction.

Industrial III and Cameron signed the revised draft of the "Corporate Search Services Agreement" containing the six-month tail on June 21, 2005.

> The June 21, 2005 agreement directed Industrial III to
>
> . . . pursue company(s) for acquisition, merger, joint venture, partnership, strategic alliance, sales arrangement, licensing or similar business trade or commerce affiliation with the following general acquisition criteria:
>
> > Companies within the Surface Business: Wellhead, Gate Valves, and Christmas Trees Drilling Products Business: BOP and Rental Tool Business with Revenues Between $1 Million - $20 Million.

The June 21, 2005 agreement terminated on December 31, 2005.

Industrial III's president, Jonathan Reed, testified that Industrial III agreed to a shorter six-month tail because it "really wanted the assignment" and knew that

3

Cameron would not accept a 24-month tail. According to Reed, a Cameron representative assured Industrial III that Cameron could close a deal within six months.

Burns was the president of Melco and Townsend. Industrial III approached Burns in September 2005 to discuss registering Melco and Townsend. Industrial III executed a "Confidentiality and Non-Circumvention Agreement" with Melco and Townsend on October 4, 2005. The agreement provided that "once the identity of the individuals and/or business entity is disclosed by [Industrial] III, that [Melco and Townsend] will not participate in any [t]ransaction, either directly or indirectly, without the participation of [Industrial] III" for 36 months. The confidentiality agreement did not require Melco and Townsend to pay a fee to Industrial III.

Industrial III registered Melco and Townsend with Cameron on October 5, 2005. Reed testified that after Cameron failed to make an offer to purchase Melco and Townsend within six months of the introduction, Cameron (1) asked Industrial III to refrain from introducing Melco and Townsend to other potential purchasers; and (2) promised to pay a fee to Industrial III if Cameron later purchased Melco and Townsend.

Cameron executed a new agreement with Industrial III on December 22, 2005. The December 22, 2005 agreement was the same as the June 21, 2005 agreement except for two differences. First, the December 22, 2005 agreement excluded any "success fee" for any previously registered target companies; under this provision, the December 22, 2005 agreement did not apply to Melco and Townsend because they were registered on October 5, 2005. Second, the December 22, 2005 agreement provided that Cameron would pay a quarterly fee of $5,000 for Industrial III's search efforts.

4

On May 23, 2006, Cameron offered to pay Burns $32.5 million to acquire Melco and Townsend. Burns rejected the offer on June 14, 2006 and made no counter offer. Cameron told Industrial III in September 2006 that the prospective deal with Burns was dead.

Cameron subsequently acquired Melco and Townsend for $85 million on September 18, 2008.[1] This acquisition occurred long after the six-month tail period had expired under the June 21, 2005 contract between Industrial III and Cameron, but within the 36-month tail period under the October 4, 2005 "Confidentiality and Non-Circumvention Agreement" signed by Industrial III, Melco, and Townsend. Industrial III received no fee in connection with Cameron's September 2008 acquisition of Melco and Townsend.

Contending that it should receive a fee based on the October 2005 registration and Cameron's September 2008 acquisition of Melco and Townsend, Industrial III sued in September 2009 and asserted claims based on breach of contract, quantum meruit, unjust enrichment, fraud, negligent misrepresentation, conspiracy, and tortious interference with existing contract. Industrial III later dropped its conspiracy claim and added a claim for fraud in the inducement.

The trial court granted a directed verdict at the close of Industrial III's case during trial as to Industrial III's claims for fraud, fraud in the inducement, and negligent misrepresentation; it denied a directed verdict as to quantum meruit and unjust enrichment.

The charge as submitted to the jury did not contain questions based on quantum meruit or unjust enrichment. The reason for this is not clear from the

---

[1] Burns testified at trial that Cameron acquired Melco and Townsend on September 19, 2008. However, Plaintiff's Exhibit No. 74 shows that the acquisition occurred on September 18, 2008.

5

record. The trial court engaged in an off-the-record discussion with the parties during the charge conference. After discussion on the record resumed, the trial court overruled Industrial III's objection during the charge conference to the omission of a question on unjust enrichment from the jury charge. Industrial III did not tender requested questions on quantum meruit and unjust enrichment to the trial court during the charge conference, and it did not object to the omission of a question on quantum meruit from the jury charge.

The jury answered the charge as follows.

- The jury answered "No" in response to Question No. 1, which asked: "Did [Industrial] III and Cameron orally agree to modify the Fee provision of their June 21, 2005 signed written agreement, to terminate the 6 month term (or tail), and promise to pay [Industrial] III a success fee if Cameron purchased Melco and/or Townsend, as long as [Industrial] III did not offer Melco and/or Townsend for sale to another buyer?" Based on the "No" answer to Question No. 1, the jury did not answer Questions Nos. 2, 3, and 4.

- The jury answered "Yes" in response to Question No. 5, which asked: "Did Melco and/or Townsend and [Industrial] III agree that Melco and/or Townsend would not participate in a transaction with Cameron for a period of 36 months without notifying [Industrial] III?"

- The jury answered "No" in response to Question No. 6, which asked: "Do you find there was a lack of consideration from [Industrial] III to Melco and/or Townsend in exchange for any obligation Melco and/or Townsend assumed under the agreement?"

- The jury answered "Yes" in response to Question No. 7, which asked: "Did

6

Melco and/or Townsend fail to comply with the agreement?"

- The jury answered "No" in response to Question No. 8, which asked: "Did [Industrial] III commit fraud against Melco and/or Townsend?"

- The jury answered "No" in response to Question No. 9, which asked: "Was Melco and/or Townsend's failure to comply excused if a condition precedent to the agreement did not occur?"

- The jury answered "0" in response to Question No. 10, which asked: "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [Industrial] III for its damages, if any, that resulted from Melco's and/or Townsend's failure to comply[?]"

The trial court signed a take-nothing judgment in favor of Cameron, Burns, Melco, and Townsend in conformity with the jury's verdict. Industrial III filed a motion for new trial and motion to modify judgment on March 1, 2013. The trial court overruled the motions. This appeal followed.

## ANALYSIS

In light of the express six-month time limitation, Industrial III does not assert any entitlement to a fee under the June 21, 2005 contract based on (1) the October 2005 registration of Melco and Townsend; and (2) Cameron's subsequent acquisition of Melco and Townsend in September 2008. Even the originally proposed 24-month tail would not have extended far enough into the future to encompass a 2008 acquisition based on the 2005 registration. The jury rejected a contention that Industrial III and Cameron orally modified their June 21, 2005 contract to drop the six-month time limitation, and Industrial III does not challenge this jury determination on appeal. Industrial III does not assert any entitlement to a fee under the December 2005 contract signed by Industrial III and Cameron, which

7

by its express terms does not apply to previously registered companies including Melco and Townsend.

With those routes blocked, Industrial III's appellate briefing pursues alternative paths to a fee. Industrial III seeks to establish a basis for obtaining a fee in connection with the September 2008 acquisition by invoking equitable theories of recovery against Cameron, and by invoking fraud-based theories of recovery against Cameron, Burns, Melco, and Townsend. Industrial III also contends that it can recover the fee it believes Cameron should have paid in light of the jury's finding that Melco and Townsend breached their October 2005 "Confidentiality and Non-Circumvention Agreement" with Industrial III. We address these contentions below.

## I.    Quantum Meruit and Unjust Enrichment as to Cameron

Industrial III argues that the trial court erred by failing to submit questions in the jury charge on quantum meruit and unjust enrichment. Industrial III contends it was entitled to submit these theories of recovery against Cameron to the jury because Industrial III registered Melco and Townsend with Cameron in October 2005 but was not compensated when Cameron acquired these companies in September 2008.

Texas Rule of Civil Procedure 278 requires the trial court to submit requested questions to the jury if supported by the pleadings and the evidence. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992). If timely raised and properly requested as part of the charge, a judgment must be reversed when a party is denied proper submission of a valid theory of recovery or a vital defensive issue raised by the pleadings and evidence. *Hunt v. Baldwin*, 68 S.W.3d 117, 127 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing *Autry v. Dearman*, 933 S.W.2d 182, 188 (Tex. App.—Houston [14th Dist.] 1996, writ denied)).

8

It is debatable whether Industrial III preserved this complaint in the trial court. Industrial III did not tender requested questions on quantum meruit and unjust enrichment to the trial court during the jury charge. *See* Tex. R. Civ. P. 276. Industrial III filed a proposed jury charge on October 1, 2012, two months before trial began; this proposed charge included questions on quantum meruit and unjust enrichment. At the charge conference, Industrial III objected to the omission of a question on unjust enrichment, and the trial court overruled this objection.

To preserve a contention that the trial court erroneously refused to submit a requested question to the jury, the proponent should tender a "written request to the trial court for submission of the question in 'substantially correct wording.'" *Lundy v. Masson*, 260 S.W.3d 482, 503 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (quoting *Bayer Corp. v. DX Terminals, Ltd.*, 214 S.W.3d 586, 603 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)). Under Texas Rule of Civil Procedure 273, requests are to be prepared and presented to the court "within a reasonable time after the charge is given to the parties or their attorneys for examination." Tex. R. Civ. P. 273; *See also* Tex. R. Civ. P. 276 ("When an instruction, question, or definition is requested and the provisions of the law have been complied with and the trial judge refuses the same, the judge shall endorse thereon 'Refused,' and sign the same officially."). In appropriate circumstances, however, filing a proposed charge before trial may preserve a complaint regarding the failure to submit a question when the record shows that the trial court was aware of the question in the proposed charge and purposefully refused to submit it. *See Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 830-31 (Tex. 2012).

It is unclear on this record whether the trial court was aware of Industrial III's questions on quantum meruit and unjust enrichment in the proposed charge and purposefully refused to submit them. Even if this appellate complaint was

9

preserved under a generous interpretation of the rules, we nonetheless conclude that the trial court did not err in failing to submit jury questions on Industrial III's claims against Cameron for quantum meruit and unjust enrichment.

Quantum meruit is an equitable theory of recovery based on an implied contract to pay for benefits received. *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985). To recover under the doctrine of quantum meruit, a party must establish: "(1) valuable services and/or materials were furnished, (2) to the party sought to be charged, (3) which were accepted by the party sought to be charged, and (4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

Unjust enrichment is an implied contract theory based on the principle that one should make restitution when it would be unjust to retain benefits received. *Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 723 (Tex. App.— Houston [1st Dist.] 2011, no pet.). Unjust enrichment allows recovery "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc.*, 832 S.W.2d at 41. It is "based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005).

Industrial III invokes these equitable theories in an effort to obtain a fee arising from its October 2005 registration based on a September 2008 acquisition. The acquisition's timing means that the June 21, 2005 agreement's express six-month tail period forecloses a contract recovery. The jury answered "No" in response to Question No. 1 when it was asked whether the agreement had been modified orally to eliminate the six-month tail and obligate Cameron to pay a fee to Industrial III outside of that specific time limit. The jury's answer to Question

10

No. 1 stands unchallenged on appeal.

Generally speaking, a party may not recover under quantum meruit or unjust enrichment if an express contract covers the services or materials furnished. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683-84 (Tex. 2000); *Ellis v. Reliant Energy Retail Servs., L.L.C.*, 418 S.W.3d 235, 255 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The equitable remedy of quantum meruit is unavailable when an express contract covers the subject matter at issue because the party seeking compensation has a legal remedy under the contract. *Christus Health*, 359 S.W.3d at 722-23. The court decides the legal question of whether an express contract covers the services at issue. *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 70 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Cameron argues that the June 21, 2005 agreement under which Melco and Townsend were registered bars Industrial III from recovering in quantum meruit and unjust enrichment. Industrial III contends that it is entitled to pursue recovery under quantum meruit and unjust enrichment notwithstanding the agreement because that agreement only covers services furnished by Industrial III from June 21, 2005 to December 31, 2005. According to Industrial III, the existence of this written contract does not foreclose its recovery of a fee based on an equitable claim because Cameron purchased Melco and Townsend after the agreement terminated on December 31, 2005. Industrial III relies on *Fortune Production*, 52 S.W.3d at 671, to support its contention.

In *Fortune Production*, four natural gas producers, Fortune, Tucker, Hankamer, and Cox had written agreements to sell natural gas to Conoco's predecessor in interest, Farmland. *Id*. at 673-74. Farmland assigned the contracts to Enerfin, which eventually assigned the contracts to Conoco. *Id*. at 674. Conoco

11

terminated the producers' contracts as they expired, hoping to negotiate new lower-priced contracts with them. *Id*.

Fortune, Tucker, and Hankamer signed two-year written contracts with Conoco covering the sale of gas. *Id*. Cox did not sign a new contract after his original contract terminated but continued to deliver gas to Conoco. *Id*. After the initial two-year term lapsed, Fortune and Tucker again negotiated two-year contracts with Conoco but Hankamer did not. *Id*. The producers sued Conoco alleging fraud in the inducement and claiming unjust enrichment because Conoco sold field liquids it collected by compressing the natural gas flow from the producers without sufficiently paying the producers. *Id*. at 675. The trial court rendered judgment for the producers on the basis of their unjust enrichment claims. *Id*.

The court of appeals affirmed the trial court's judgment. *Id*. The supreme court upheld the judgment in favor of Cox because Cox did not have a written contract with Conoco; reversed the judgment in favor of Fortune and Tucker because the companies had valid contracts dealing with the subject matter of the unjust enrichment claim; and remanded the judgment in favor of Hankamer because the jury did not distinguish between the time Hankamer was operating under an express contract and the period it was not. *Id*. at 685.

Industrial III argues that *Fortune Production* supports its position because, like Cox, Industrial III was not a party to an express contract with Cameron covering the purchase of Melco and Townsend when the purchase occurred in 2008. We disagree. The June 21, 2005 agreement states that "any candidate submitted under this agreement shall be governed by this agreement. Unless . . . superseded by other agreements, this Agreement shall be valid for Candidates submitted by [Industrial] III prior to cancellation of this Agreement." The June 21,

2005 agreement terminated on December 31, 2005. Industrial III registered Melco and Townsend on October 5, 2005; therefore Melco and Townsend were candidates "submitted . . . prior to cancellation of this Agreement" and were governed by the June 21, 2005 agreement. Under that agreement, the acquisition had to occur within six months of the October 2005 registration in order for Industrial III to obtain a fee. The acquisition occurred almost three years after registration.

Adopting Industrial III's position would allow it to recover a fee for an acquisition that occurred almost three years after registration despite the express six-month tail limiting the time period for which a fee was to be paid – a time limitation that was specifically negotiated between sophisticated contracting parties and knowingly accepted by Industrial III for its own business reasons. In essence, Industrial III invokes equitable claims to (1) replace the contract's express six-month tail with a three-year tail; and (2) achieve a result that the jury rejected when it rejected Industrial III's contention that the parties modified their contract to drop the six-month limitation. We cannot accept Industrial III's contentions because equitable theories such as quantum meruit and unjust enrichment cannot be used to supplant unambiguous provisions or rewrite the parties' contract. *See, e.g., Excess Underwriters at Lloyd's, London v Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 49-52 (Tex. 2008); *cf. Crestview, Ltd. v. Foremost Ins. Co.*, 621 S.W.2d 816, 822 (Tex. Civ. App.—Austin 1981, writ ref'd n.r.e.) (equity cannot be invoked to "'change the contract of a party, and relieve him from an obligation fairly undertaken,'" or to "'substitute one agreement for another.'") (quoting *Trevino v. Cantu*, 61 Tex. 88 (1884)).

We overrule Industrial III's first issue.

## II. Fraud

13

Industrial III next argues that the trial court erred by granting a directed verdict on its fraud claims against Cameron, Burns, Melco, and Townsend.

A trial court may direct a verdict when a plaintiff fails to present evidence raising a fact issue essential to its right of recovery, or when the evidence conclusively proves a fact that establishes the movant's right to judgment as a matter of law. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Exxon Mobil Corp. v. Kinder Morgan Operating L.P. A*, 192 S.W.3d 120, 126 (Tex. App.—Houston [14th Dist.] 2006, no pet.). In reviewing the grant of a directed verdict, we follow the standard of review for assessing legal sufficiency of the evidence. *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996); *see generally City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005). We consider the evidence in the light most favorable to the party against whom the verdict is directed. *Tex. Emp'rs Ins. Ass'n v. Page*, 553 S.W.2d 98, 102 (Tex. 1977). We must determine if there is any conflicting evidence of probative value that raises a material fact issue. *White v. Sw. Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex. 1983). We can consider any reason why the directed verdict should have been granted, even if not stated in the party's motion. *Gomer v. Davis*, 419 S.W.3d 470, 476 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

A viable fraud claim requires proof of (1) a material representation that was false; (2) knowledge that the representation was false, or a representation made recklessly as a positive assertion without any knowledge of its truth; (3) intent to induce the plaintiff to act upon the representation; (4) actual and justifiable reliance upon the representation resulting in injury; and (5) damages. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001); *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992). If a representation involves a promise to do an act in the future, then a plaintiff also must prove that,

14

at the time the representation was made, the defendant had no intention of performing the act. *See Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). In a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties. *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001).

According to Industrial III, the record contains evidence of misrepresentations sufficient to warrant submission of fraud to a jury. Industrial III points to representations that Cameron (1) would close a deal within six months; (2) wanted to buy the types of companies listed within the scope paragraph of the June 21, 2005 agreement; and (3) would pay a fee to Industrial III if Cameron acquired Melco and Townsend after Industrial III refrained from shopping Melco and Townsend to other potential purchasers. Industrial III asserts that the record contains evidence of fraudulent representations by Burns, Melco, and Townsend that Melco and Townsend would not consummate a transaction with a buyer introduced by Industrial III without Industrial III's participation in the transaction. Industrial III also points to these asserted misrepresentations as the basis for viable fraudulent inducement claims against Cameron, Burns, Melco, and Townsend.

We conclude that the trial court properly granted a directed verdict on Industrial III's fraud and fraudulent inducement claims against Cameron, Burns, Melco, and Townsend because this record contains no evidence of a causal connection between the asserted misrepresentations and any non-speculative fraud damages.

Direct damages for fraud can be based on the out-of-pocket measure or the benefit-of-the-bargain measure. *See Formosa Plastics Corp. USA*, 960 S.W.2d at 49. "The out-of-pocket measure computes the difference between the value paid

and the value received . . . ." *Id*. Industrial III does not claim out-of-pocket damages in this case, and there is no evidence of any such damages in this record.

Benefit-of-the-bargain damages are based on "the difference between the value as represented and the value received." *Id.* Industrial III contends that its benefit-of-the-bargain damages are "lost profits" in the form of the fee Industrial III should have received but did not receive when Cameron acquired Melco and Townsend in 2008, computed as a percentage of the $85 million purchase price paid by Cameron. "[W]hile a benefit-of-the-bargain measure can include lost profits, it only compensates for the profits that would have been made if the bargain had been performed as promised." *Id*. at 50. "Under the benefit-of-the-bargain measure, lost profits on the bargain may be recovered if such damages are proved with reasonable certainty." *Id*.; *see also Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 776 (Tex. 2009) (per curiam).

With respect to its fraud and fraudulent inducement claims against Cameron, Industrial III contends on appeal that it would not have signed the June 21, 2005 agreement with Cameron had it known that Cameron (1) would not close a deal within six months; and (2) did not intend to buy the types of companies identified in that agreement's scope paragraph. Industrial III further contends that it would have shopped Melco and Townsend to other prospective purchasers had it not been assured that Cameron would pay a fee. Industrial III argues that the asserted misrepresentations "caused [Industrial] III injury as evidenced by Hancock's testimony as to the value of the lost commission on the sale of [Melco and Townsend] . . . to Cameron or some other buyer."

Industrial III's evidence of reliance at trial focused on its decision to accept a six-month tail instead of a 24-month tail. We conclude that Industrial III failed on this record to proffer evidence of a causal link between the asserted fraud and

16

benefit-of-the-bargain damages measured as "lost profits" based on a percentage fee.

Damages expert Robert Hancock testified to a fee of $890,000 due under the formula contained in the June 2005 contract, computed as five percent of the first $1 million of the purchase price Cameron paid in 2008 plus one percent of the remaining $84 million. Hancock also testified based on his experience that the typical fee without a contract in an $85 million deal would be $850,000, computed as half of one percent of the purchase price for the initial introduction plus another half of one percent upon closing.

The portions of Hancock's expert testimony cited by Industrial III do not address causation, and they do not address the reasonable certainty of obtaining a fee from Cameron or any other purchaser. Hancock opined about fee percentages for this type of brokerage service in the industry and then did the math for the jury by applying those percentages to the $85 million purchase price Cameron paid in 2008.

Reed testified at trial that the initial 24-month tail proposed by Industrial III was "something we had to hold to. I mean, we did. And as much as we could, we tried." He testified that when Cameron requested a six-month tail instead of a 24-month tail "they assured us they could and would close a deal in six months under this agreement." According to Reed, "[t]hat's the only [way] they got me" to consider the six-month tail demanded by Cameron. He also stated, "And we, you know, we relied on that and so we accepted it."

When trial resumed the next day, Reed testified again: "I relied on the six-month change of term because they assured us they would be able to close a deal in six months." Reed reiterated this point during the following exchange while Cameron's attorney cross-examined him:

17

Q.     I just asked you why you didn't propose something like 12 months.

A.     We had already proposed 24 months and tried to keep that number, and we did.

Q.     Well 24, 6 months, I'm just saying, why didn't you counter-propose some other term rather than sign it 6 months?

A.     Mr. Levine, I am explaining.

Q.     Okay.

A.     We thought it foolish to go to 12 months.

Q.     Well, then, why did you sign?

A.     Because of . . . the reliance on their conversation they can close a deal in 6 months.

Reed then stated:  "[I]f I knew that where we were right now in litigation, I probably would not have accepted the 6-month tail.  I wouldn't have trusted that statement to be true."  He also stated:  "I relied – I will tell you the decision that was made from 24 months to six months was based on the fact that we felt, you know what?  Yeah, they are probably going to go with it.  We were probably a little naive."

It is undisputed on this record that Cameron's 2008 purchase of Melco and Townsend occurred nearly three years after the 2005 registration – and long after the tail would have expired even if it had been set at 24 months as Industrial III originally requested in 2005.  On this record, therefore, Industrial III cannot establish a causal connection between (1) its acceptance in 2005 of a six-month tail instead of a 24-month tail in reliance on a representation about timing; and (2) the fee on a 2008 transaction that would have been unavailable to Industrial III regardless of whether Industrial III agreed to a six-month tail or a 24-month tail.

With respect to Burns, Melco, and Townsend, Industrial III likewise failed to proffer evidence of a causal link between the asserted fraud and any reasonably

18

certain, non-speculative benefit-of-the-bargain damages. According to Industrial III's brief, Reed and Hancock testified that Industrial III "could have taken action to stop the closing without [Industrial] III being paid a fee which would have likely resulted in [Industrial] III being paid a fee" if Industrial III had been notified that acquisition negotiations had resumed in 2008. The cited testimony does not support this assertion. As noted above, Hancock's cited testimony does not address causation or the likelihood that a fee would have been paid. Reed testified that he doubted a trial would have occurred if Burns, Melco, and Townsend had notified Industrial III of the resumption of negotiations with Cameron in 2008. Reed also stated: "I think Cameron and I would have come to an understanding. If you would have been so kind and gracious and righteous to do that, we wouldn't be here . . . ." This testimony is speculative at best, and it provides no evidence upon which a jury reasonably could rely to conclude that Industrial III's failure to receive a fee from Cameron is attributable to the asserted fraud of Burns, Melco, and Townsend.

We overrule Industrial III's second issue.

## III.  Breach of the Confidentiality Agreement by Melco and Townsend

Industrial III asserts in its third issue that the jury's answer to Question No. 10 is against the great weight and preponderance of the evidence and is manifestly unjust.

In answer to Question No. 7, the jury found that "Melco and/or Townsend" failed to comply with the October 2005 "Confidentiality and Non-Circumvention Agreement." The jury answered "0" to Question No. 10, which asked:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [Industrial] III for its damages, if any, that resulted from Melco's and/or Townsend's failure to comply.

19

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. In answering this question you shall not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss, that is, do not compensate twice for the same loss, if any.

Do not add any amounts for interest on damages, if any. Answer in dollars and cents, if any.

As to Melco and/or Townsend:

     Answer:    $_____0_____

Industrial III argues that it should have been awarded a fee of $890,000 as lost profits arising from Melco's and Townsend's breach of the "Confidentiality and Non-Circumvention Agreement."

The goal in measuring damages for a breach of contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach. *See Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991); *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 344 S.W.3d 514, 523 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). Determining the proper measure of damages is a question of law for the court. *Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 328 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The normal measure of damages in a breach of contract case is the expectancy or benefit-of-the-bargain measure. *See Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). The purpose of this measure of damages is to restore the injured party to the economic position it would have occupied had the contract been performed. *See Friendswood Dev. Co.*, 344 S.W.3d at 523; *Mays*, 203 S.W.3d at 577.

Industrial III asserts that it should have recovered benefit-of-the-bargain damages from Melco and Townsend measured as the fee it would have been paid

by Cameron if Melco and Townsend had not worked directly with Cameron. Reed testified at trial that Melco and Townsend did not owe Industrial III a success fee under the "Confidentiality and Non-Circumvention Agreement." Plaintiff's Exhibit No. 18 shows that the agreement provided that "once the identity of the individuals and/or business entity is disclosed by [Industrial] III, that [Melco and Townsend] will not participate in any [t]ransaction, either directly or indirectly, without the participation of [Industrial] III." There was no testimony that Melco and Townsend promised to pay a fee. The only evidence of a fee promised to Industrial III was contained in the June 21, 2005 agreement with Cameron. Reed testified that the June 21, 2005 agreement had a six-month tail, and Burns testified that Cameron purchased Melco and Townsend on September 19, 2008.

Even if Melco and Townsend had performed their contractual obligations to Industrial III under the "Confidentiality and Non-Circumvention Agreement," and even if Industrial III had been notified of the 2008 transaction, Industrial III would not have been entitled to a fee under either the October 2005 "Confidentiality and Non-Circumvention Agreement" or the June 21, 2005 agreement between Industrial III and Cameron. Reed's speculation that he could have come to an "understanding" with Cameron in 2008 provides no basis for concluding that Industrial III could have used the "Confidentiality and Non-Circumvention Agreement" as the vehicle to obtain a fee. And as noted above, the timing of the 2008 acquisition foreclosed a fee under the June 2005 agreement between Industrial III and Cameron regardless of whether the tail period was six months or 24 months.

On this record, the jury's "0" answer to Question No. 10 is not against the great weight and preponderance of the evidence. We overrule Industrial III's third issue.

21

## IV. Plaintiff's Exhibits Nos. 79 and 134

Industrial III argues in its fourth issue that the trial court erred in refusing to admit Plaintiff's Exhibits Nos. 79 and 134. Plaintiff's Exhibit No. 79 is an engagement letter from Simmons & Company, International to Cameron, and Plaintiff's Exhibit No. 134 is a SEC filing that discussed a transaction Cameron closed with a company named Natco Group, Inc. The SEC filing shows that Cameron began discussions with Natco in early 2004 but did not purchase Natco until early 2009. Industrial III argued that Plaintiff's Exhibit No. 134 should be admitted into evidence at trial to impeach a Cameron employee's testimony that Cameron closed the deal with Natco in less than six months. Cameron argues that Industrial III did not preserve error because Plaintiff's Exhibits Nos. 79 and 134 were not offered into evidence; it also contends they are not relevant.

### A. Preservation

We review a trial court's decision to exclude evidence for an abuse of discretion. *McBride v. McBride*, 396 S.W.3d 724, 730 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence or a summary of the evidence and secure an adverse ruling from the court. *Sink v. Sink*, 364 S.W.3d 340, 347 (Tex. App.—Dallas 2012, no pet.) (citing *Fletcher v. Minn. Mining & Mfg. Co.*, 57 S.W.3d 602, 607 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)). Without an offer of proof, the reviewing court cannot determine whether exclusion of the evidence was harmful. *Id.* Thus, when evidence is excluded by the trial court, the proponent of the evidence must preserve the evidence in the record in order to complain of the exclusion on appeal. *Fletcher v. Minn. Mining & Mfg. Co.*, 57 S.W.3d 602, 606 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). An offer of proof preserves error for appeal if: (1) it is made before the court, the court

22

reporter, and opposing counsel, outside the presence of the jury; (2) it is preserved in the reporter's record; and (3) it is made before the charge is read to the jury. *Id.* at 607. A ruling on a motion in limine is not a ruling on admissibility and does not preserve error for appellate review. *Hiroms v. Scheffey*, 76 S.W.3d 486, 489 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

When no offer of proof is made before the trial court, the party must introduce the excluded testimony into the record by a formal bill of exception. *See In re Estate of Miller*, 243 S.W.3d 831, 837 (Tex. App.—Dallas 2008, no pet.). Failure to demonstrate the substance of the excluded evidence results in waiver. *Bobbora v. Unitrin Ins. Servs.*, 255 S.W.3d 331, 335 (Tex. App.—Dallas 2008, no pet.); *Sw. Country Enters., Inc. v. Lucky Lady Oil Co.*, 991 S.W.2d 490, 493 (Tex. App.—Fort Worth 1999, pet. denied).

Industrial III discussed Plaintiff's Exhibit No. 79 during a hearing on its motion in limine. The court granted the motion in limine. Industrial III did not offer Plaintiff's Exhibit No. 79 into evidence during trial and did not offer a bill of exception.[2] Because Industrial III failed to make an offer of proof or a bill of exception concerning Plaintiff's Exhibit No. 79, the substance of the excluded evidence is not in the appellate record; therefore, Industrial III failed to preserve error. *See Int'l Ass'n for Colon Hydrotherapy v. State*, No. 05-07-01046-CV, 2008 WL 5003457, at *1 (Tex. App.—Dallas Nov. 26, 2008, pet. denied) (mem. op.).

Industrial III preserved error as to Plaintiff's Exhibit No. 134 by offering Plaintiff's Exhibit No. 134 into evidence during trial and explaining that the exhibit was a SEC filing that discussed a transaction between Cameron and Natco. The

---

[2] At trial, Industrial III briefly discussed Plaintiff's Exhibit No. 79 during a conference outside the presence of the jury, stating that "it was unusual for Cameron to hire business brokers or pay business brokers and that's some indication of why they don't want to pay III." Industrial III did not make an offer of proof in connection with the discussion.

trial court allowed Industrial III to question the witness about the document, but denied Industrial III's request to admit it into evidence.[3]

## B.    Relevance

Industrial III argues that Plaintiff's Exhibit No. 134 is relevant to its breach of contract claim because it shows that Cameron did not close the Natco transaction within six months; Cameron orally amended agreements; and Cameron agreed to pay intermediaries success fees.  Industrial III argues that Plaintiff's Exhibit No. 134 shows that Cameron did not close the Natco transaction within six months despite Cameron's contention that it did.  Industrial III contends that the exhibit was material to the jury's "No" answer to Question No. 1, which asked:

> Did III and Cameron orally agree to modify the Fee provision of their June 21, 2005 signed written agreement, to terminate the 6[-]month term (or tail), and promise to pay III a success fee if Cameron purchased Melco and/or Townsend, as long as III did not offer Melco and/or Townsend for sale to another buyer?

> In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.[4]

Industrial III also argues that the admission of Exhibit No. 134 would have impeached the testimony of Cameron's representatives.  We reject this argument because Industrial III failed to show harm.  *See* Tex. R. App. P. 44.

Craig Jones, Cameron's vice president of finance, testified at trial that the Natco transaction took less than six months to close.  During Industrial III's cross-

---

[3] The trial court ruled on the admissibility of Plaintiff's Exhibit No. 134 by stating: "Ask him about [the SEC filing], but I'm not going to send it back to the jury."

[4] Industrial III also asserts that Plaintiff's Exhibit No. 134 is relevant to its fraud claim. Having concluded that Industrial III failed to prove damages from its fraud claim, we need not address this contention.

examination, Jones stated that Cameron discussed acquiring Natco in 2004 but did not acquire it until 2009. Because the information in Plaintiff's Exhibit No. 134 concerning the Natco transaction was cumulative of Jones's testimony that the Natco transaction took longer than six months to complete, Industrial III was not harmed by the trial court's refusal to include Plaintiff's Exhibit No. 134 in the record. *See Bartosh v. Gulf Health Care Ctr.-Galveston*, 178 S.W.3d 434, 443 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (The exclusion of cumulative evidence cannot constitute harmful error.).

Accordingly, we overrule Industrial III's fourth issue.

## V.    Costs

Industrial III argues in its final issue that the trial court erred in awarding costs to Cameron, Burns, Melco, and Townsend. Industrial III asserts that Cameron, Burns, Melco, and Townsend were not successful parties.

Rule 131 provides that the "successful party" shall recover from his adversary court costs. Tex. R. Civ. P. 131. A "successful party" under the rules is a party who obtains a judgment vindicating a civil right. *Bayer Corp. v. DX Terminals, Ltd.*, 214 S.W.3d 586, 611–12 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). A defendant who obtains a take-nothing judgment is a successful party. *Swallow v. QI, LLC*, No. 14-10-00859-CV, 2012 WL 952246, at *7 (Tex. App.—Houston [14th Dist.] Mar. 20, 2012, pet. denied) (mem. op.); *Midwest Med. Supply Co. v. Wingert*, 317 S.W.3d 530, 539 (Tex. App.—Dallas 2010, no pet.); *Clark v. Porter*, No. 04-08-00520-CV, 2009 WL 2618359, at *4 (Tex. App.—San Antonio Aug. 26, 2009, pet. denied) (mem. op.); *Imperial Lofts, Ltd. v. Imperial Woodworks, Inc.*, 245 S.W.3d 1, 8 (Tex. App.—Waco 2007, pet. denied). When a defendant is a successful party, it is appropriate to award it costs. *Ferguson v. Beal*, 588 S.W.2d 651, 653 (Tex. Civ. App.—Houston [14th Dist.] 1979, writ ref'd

25

n.r.e.).  We review a trial court's allocation of costs under an abuse of discretion standard.  *Bayer Corp.*, 214 S.W.3d at 612.

The jury answered "No" when asked whether Cameron orally modified the June 21, 2005 agreement.  Further, although the jury found that Melco and Townsend breached their agreement with Industrial III, it did not award Industrial III monetary damages.  We cannot conclude the trial court abused its discretion in determining that Cameron, Burns, Melco, and Townsend were successful parties. *See Swallow*, 2012 WL 952246, at *7.

We overrule Industrial III's final issue.

### CONCLUSION

Having overruled all of Industrial III's issues, we affirm the trial court's judgment.


/s/          William J. Boyce
             Justice

Panel consists of Justices Boyce, Christopher, and Brown.